NATIONAL CORDAGE CO. v. PEARSON CORDAGE CO.

(Circuit Court of Appeals, First Circuit. February 28, 1893.)

No. 47.

1. CORPORATIONS—OFFICERS—AUTHORITY—CONTRACTS—EVIDENCE.

In an action on a contract for the sale of hemp executed on behalf of a cordage company by its treasurer, the company contended that he had no authority to make such contracts. There was put in evidence a by-law of the company to the effect that the treasurer "should discharge the duties usually and customarily pertaining to" such office; and a witness for plaintiff testified that he was familiar with the duties of treasurers of cordage and other manufacturing companies at the place where the contract was executed, and where the cordage company was located, and that they were accustomed to buy and sell merchandise, and to sign and accept contracts similar to the one in suit. Held, that the question of the treasurer's authority to bind his company by such a contract was for the jury.

2. SALE—CONTRACT—CONSTRUCTION.

A contract recited in its first paragraph that defendant had sold to plaintiff a certain number of bales of hemp for future delivery. The

second paragraph stated that "contracts for" a like number of bales bought by defendant "are to be given to" plaintiff "in place of this contract, which is to be surrendered." An addendum to this contract stated that "it is agreed that the acceptance of contracts by" the plaintiff, "if given, shall not in any way change the liability of either party hereto as regards terms of sale and price." *Held* that, construing the two papers together, the contract was not a mere sale of contracts for hemp, but that the vendor had the option to deliver the contracts, and, if it failed to exercise this option, the contract remained a sale of the actual bales of hemp.

**3.** SAME—BREACH—CONFIRMATION—CONDITIONS.

Defendant contended that this contract was made subject to an existing agreement that plaintiff should purchase hemp from defendant alone, and that, as plaintiff had thereafter made certain purchases in the open market, the contract of sale was abrogated. It appeared that defendant afterwards sent plaintiff an alleged confirmation of the original contract, reducing the quantity called for therein by that purchased by plaintiff in the open market; and the paper concluded: "This contract is further subject to the proper execution by the" plaintiff "of its general contract with the" defendant. *Held*, that this was not to be considered an amendment to the original contract so as to make the whole transaction subject to this condition, but the condition applied only to the so-called "confirmation," and, having never been performed, the confirmation never took effect.

**4.** SAME—MEASURE OF DAMAGES—EVIDENCE.

After being notified that defendant would not complete the sale, plaintiff bought a cargo of hemp of greater quantity than that contracted for from defendant; and defendant asked an instruction that if this hemp was bought as a substitute for that which defendant failed to deliver under its contract, then the measure of damages would be the difference between the price so paid and the contract price. *Held*, that the instruction was properly refused where there was no evidence that the plaintiff intended this purchase as a substitute for the hemp which defendant refused to deliver.

In Error to the Circuit Court of the United States for the District of Massachusetts.

At Law. Action by the Pearson Cordage Company against The National Cordage Company for alleged breach of contract. Verdict and judgment for plaintiff. Defendant brings error. Affirmed.

The contract originally entered into between the parties was as follows:

"New York, April 5, 1890.

"Sold by The National Cordage Company, of New York, to the Pearson Cordage Company, of Boston, eight thousand (8,000) bales Manilla hemp, about one-half Cebu and one-half current; Cebu at nine and one-quarter (9¼) cents per pound, current at nine (9) cents per pound; both less one and one-half per cent. for cash, delivered in Boston, shipment from Manilla during the months of April and May by sailing vessel, or equivalent delivery by steam. Contracts for the first and third four thousand bales of Manilla of these grades, which is bought by The National Cordage Company, their representatives or agents, (contracts running direct from the importer to the Pearson Cordage Company,) are to be given to the Pearson Cordage Company in place of this contract, which is to be surrendered.

"Accepted:                                        Pearson Cordage Company.
                                        "B. Preston Clark, Asst. Treasurer.
                                        "The National Cordage Company.
                                        "E. M. Fulton, Treasurer."

To this contract there was afterwards added the following:

"New York, April 9, 1890.

" It is understood and agreed and made part of the within contract that at time of arrival of hemp buyers are to pay any increase in present duty of $25 per ton, and to receive benefit of any reduction. And it is agreed that the acceptance of contracts by the Pearson Cordage Company, if given, shall not in any way change the liability of either party hereto as regards terms of sale and price.

"Accepted:                                    The National Cordage Co.
                                                    "E. M. Fulton, Treas.
"Accepted:                                    B. C. Clark,
                                        "Pres. & Treas. of the Pearson Cordage Co."

It appeared that prior to the execution of these papers there had been negotiations between the parties looking to the appointment of The National Cordage Company as the sole agent of the plaintiff to buy all hemp required by it in its business, and a contract to that effect had been signed by plaintiff "subject to approval of counsel." Defendant contended that this contract for the sale of hemp was made with the understanding that it was to be subject to this general contract, and that, as plaintiff had violated the latter, the contract sued on was abrogated. The contention was based on evidence that about April 12th the plaintiff purchased certain other hemp; and the correspondence between the parties showed dissatisfaction on defendant's part with this purchase, and an intimation that the contracts of sale would not be performed by it. Thereafter the following paper was executed by defendant, and sent by mail to plaintiff:

"Contract for hemp under date April 5th, 1890, by which The National Cordage Co. sold the Pearson Cordage Co. eight thousand bales of Manilla hemp (4,000 bales current at 9 cents, less interest, and 4,000 bales Cebu at 9¼c., less interest) is hereby confirmed with the following restriction: The Pearson Cordage Co. having bought 2,764 bales per Nellie M. Slade and 440 bales by the Gen. Domville, their contract for the 8,000 bales is reduced correspondingly, both as regards quantity and quality. This contract is further subject to the proper execution by the Pearson Cordage Co. of their general contract with The National Cordage Co.

                                        "The National Cordage Co.,
                                        "J. M. Waterbury, President."

Defendant contended that this was an essential part of the original contract of April 5th–9th, and that, as the general contract herein referred to was never executed by plaintiff, this confirmation never took effect. There was a conflict of evidence as to whether this was accepted by the plaintiff. It was also shown that on the 5th of May plaintiff, after having been notified that defendant would not perform its contract, bought a cargo of hemp out of the ship Granite State, referred to in the opinion. The jury found a verdict for plaintiff for $41,391, upon which judgment was entered for plaintiff, and defendant sued out a writ of error.

Richard Olney, Lewis S. Dabney, and Reginald Foster, for plaintiff in error.

Robert M. Morse and Horace G. Allen, for defendant in error.

Before COLT and PUTNAM, Circuit Judges, and NELSON, District Judge.

PUTNAM, Circuit Judge. The third and fourth requests for instructions to the jury made in the court below by The National Cordage Company, defendant in that court, and now plaintiff in error, were not carried into the bill of exceptions, and therefore are not before us for adjudication. The eighth and eleventh requests have been waived in this court, and also the questions raised at the trial touching the admissibility of certain testimony.

We will first consider the second request, which was, in effect, that the court instruct the jury that the treasurer of The National Cordage Company, who purported to have executed the alleged contract in suit, was not authorized to bind that corporation. This court has on two occasions reviewed the law touching the duty of courts to instruct juries to make findings for plaintiff or defendant, as the case may be, and has no occasion to reiterate what has been said, as the rule is clear and thoroughly settled. The proposition of the plaintiff in error is that there was not sufficient evidence to go to the jury; and, as no exceptions were taken to the specific instructions of the court on this point, the plaintiff in error is limited to that request. The by-law of The National Cordage Company was put in evidence, to the effect that the treasurer "should discharge the duties usually and customarily pertaining" to such office. Aside from other witnesses, Benjamin C. Clark, a witness for the plaintiff in the court below, first qualified himself by showing an apparently extensive experience, and, being asked what were the usual and customary duties of treasurers of cordage companies and manufacturing companies at New York, the habitat of The National Cordage Company, and the place of negotiation of the alleged contract in suit, testified that such treasurers buy and sell merchandise, sign contracts, and accept contracts, and enlarged upon this. That this condition of the proofs made an issue eminently proper for the jury this court cannot doubt.

The seventh and twelfth requests for instructions, and perhaps some other portions of the bill of exceptions, turn upon the claim of The National Cordage Company that the alleged contract in suit was not for the sale and delivery of hemp, but for the sale and delivery of certain contracts for hemp. The phraseology of the original paper of April 5, 1890, is not clear on this point; but doubt was removed by the additional paper of April 9, 1890, which contains the following: "And it is agreed that the acceptance of contracts by the Pearson Cordage Company, if given," and so on. This shows that the party vendor had an option of giving contracts, which, of course, is inconsistent with any pretense that both parties were bound to give and receive them. There is no evidence in the case that The National Cordage Company undertook to avail itself of the option, so that the contract stands as one for the purchase and sale of hemp.

The propositions made by the plaintiff in error touching some portions of the case which indicate that the Pearson Cordage Company preferred to acquire the original importer's contracts, also touching the circumstances of the parties, also touching the

claim that this addendum of April 9th was suggested by the Pearson Cordage Company, and assented to by the plaintiff in error solely for purposes aside from the point we are considering, are too remote to be applied by a court of common law in construing this or any other contract, whatever effect they might have in tribunals proceeding on broader or equitable principles. Also the suggestions that the first paragraph of the paper of April 5th is to be construed in connection with the closing one, and that the former is in the form of a bill of parcels, to which the merchants who drew the paper were accustomed, do not meet the case, because the true color of the transaction in this particular comes from the addendum of April 9th.

The tenth request for instructions made by the plaintiff in error relates to a cargo of hemp by the ship Granite State, purchased by the Pearson Cordage Company May 5, 1890; and certain instructions of the court to the jury, to which exceptions were taken by the plaintiff in error, relate to the same cargo. The request was, in substance, that if the Pearson Cordage Company, acting under the notice from The National Cordage Company that the contract would not be performed, bought this cargo as a substitute, the measure of damages would be the difference between the contract price and the price in fact paid for an equivalent proportion of the cargo; and the instructions on this topic excepted to were to the effect that purchases by the Pearson Cordage Company were immaterial, except so far as they might bear on questions of waiver, or upon the market value, and the court closed as follows: "You may consider the purchases by the Boston company [meaning the Pearson Cordage Company] upon the question of waiver, wherever you think they may bear, and upon the value of hemp, but not otherwise."

As the exceptions to these instructions were taken in general terms, it is impossible for us to perceive precisely the grounds on which they were intended to rest; but, as they were not expressed specifically with reference to any point of time at which the purchase was made, we are forced to conclude that they are limited, and were intended to be limited, to substantially the same issue as that raised by the tenth request for instructions, and the observations relating thereto in the brief for the plaintiff in error, including the cases there cited, lead to the same conclusion. We think, therefore, we dispose of both objections when we dispose of the tenth request. Without at all considering the proposition of law which this covers, or noting specifically its terms, it is sufficient to say that no evidence is shown us to which it is relevant, and therefore it would have been improper for the court to have complied with it. The only evidence to which we are referred by the plaintiff in error is that of Benjamin C. Clark, one of the officers of the Pearson Cordage Company, called out by the plaintiff in error on cross-examination. He expressly denied the proposition of fact which the request assumes as its basis. Whatever inferences might be derived from the circumstances of the case if the plaintiff in error had furnished any affirmative proofs, they have

no place where the plaintiff in error was contented to rest entirely on negations called out in cross-examination of the witness of the opposing party. The parts of the record to which our attention has been called did not furnish sufficient evidence to go to the jury as a basis for the requested instruction under consideration.

The remaining exceptions of the plaintiff in error group about the claim that, upon alleged undisputed facts, a paper, which was inclosed by The National Cordage Company to the Pearson Cordage Company in its letter of April 19, 1890, was retained by the Pearson Cordage Company without objection, and otherwise under such circumstances that the court was bound to instruct the jury that this paper superseded the alleged contract of April 5th, with the addendum of April 9th, or that by its retention The National Cordage Company was prevented from supplying itself with hemp, or making contracts for hemp, when the market was in condition for that purpose, and was thus prejudiced by the subsequent rise of prices; and that, therefore, the Pearson Cordage Company was estopped from maintaining this suit.

These two branches of this proposition resolve themselves into one, as it is impossible to conceive that the retention of the paper of April 19th could operate technically as an estoppel, or in any sense as such, unless its retention, and the circumstances under which it was retained, either as a matter of law or of fact, constituted an acceptance, so as to create a new contract which wholly or partially superseded the original one. The record does not appear to us to sustain the proposition of the plaintiff in error that the facts as claimed on this point by it were in any sense undisputed. On the other hand, this entire branch of the case seems to us to be involved in a cloud of disputed allegations and controverted proofs, eminently proper for the jury under suitable instructions from the court. But it is not necessary to consider this at length, because the terms of the paper inclosed in the letter of April 19th put it beyond doubt that none of the rulings or refusals to rule of which the plaintiff in error complains could have been prejudicial to it. It closes with the following words: "This contract is further subject to the proper execution by the Pearson Cordage Co. of their general contract with The National Cordage Co." This seems to us in the nature of a condition or provision precedent, and not of one subsequent; and it would be fairly understood to intend that the paper of April 19th was not to be held as executed until the general contract referred to was also executed. In other words, it seems to us to be the true construction of this closing paragraph that the two papers were to take effect simultaneously, or not at all. There is no claim in the case that the general contract referred to was ever executed. The record throughout shows that the parties never agreed upon its terms. Therefore the paper of April 19th never became effectual for any purpose. The court is unable to see any error in the record, and the judgment of the court below is affirmed.

After the foregoing decision, plaintiff in error filed a petition for a rehearing on the following grounds:

"That the true construction of said paper of April 19th is that it is to be treated as an amendment of the contract declared upon of April 5th–9th, and operates as if it had been added to or incorporated into that contract, so that the words, 'this contract is further subject to the proper execution by the Pearson Cordage Company of their general contract with The National Cordage Company' were not a condition precedent to the taking effect of said paper of April 19th, but became by the acceptance and adoption of that paper by the Pearson Cordage Company a condition of the performance of the whole contract; so that, unless such general contract were executed by the Pearson Cordage Company, neither could that company maintain an action against The National Cordage Company for nondelivery of hemp, nor could The National Cordage Company maintain an action against the Pearson Cordage Company for refusing to accept hemp. In other words, that the execution by the petitioner of said paper of April 19th, and its acceptance and adoption by the Pearson Cordage Company, incorporated it into the contract of sale, so that the contract between the parties then stood in brief as follows: (1) A sale by the petitioner to the Pearson Cordage Company of eight thousand bales of hemp. (2) A provision for the delivery of contracts for hemp instead of hemp. (3) An agreement that changes of duty either way were for the Pearson Cordage Company, and that delivery of contracts instead of hemp should not change terms of sale or price. (4) That, the Pearson Cordage Company having bought three thousand two hundred and four bales between April 9th and 19th, the amount to be sold and delivered is correspondingly reduced, and the whole contract of sale is subject to the proper execution by the Pearson Cordage Company of their general contract with The National Cordage Company."

The petition for rehearing was denied, April 13, 1893. No opinion was filed.