## CAREY v. HOUSTON AND TEXAS CENTRAL RAILWAY COMPANY.

APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE FIFTH CIRCUIT.

No. 642. Submitted December 23, 1895. — Decided March 2, 1896.

A bill in equity by a corporation, or by the stockholders of a corporation, in a Circuit Court of the United States, to set aside a final decree of that court against the corporation in a foreclosure suit, upon the ground that the decree was obtained by collusion and fraud and that the court had

no jurisdiction to make it, is an ancillary suit and a continuation of the main suit so far as the jurisdiction of the Circuit Court as a court of the United States is concerned.

As the jurisdiction of the Circuit Court of the United States was invoked throughout this litigation upon the ground of diverse citizenship, and as this bill must be regarded as ancillary, auxiliary or supplemental to the suit for the foreclosure of the mortgage, or, as it were, in continuation thereof, the decree of the Circuit Court of Appeals in that suit being made final by section 6, of the act of March 3, 1891, c. 517, 26 Stat. 826, no appeal lies to this court.

THIS was a bill filed by Carey, a citizen and resident of New Jersey, and seven other persons, citizens and residents of New York and citizens of Great Britain, respectively, as stockholders of the Houston and Texas Central Railway Company, in their own behalf and in behalf of all others similarly situated, in the Circuit Court of the United States for the Eastern District of Texas, against the Houston and Texas Central Railway Company, No. 1, a corporation created by and existing under the laws of the State of Texas and a citizen of that State, residing in the Eastern District; the Houston and Texas Central Railway Company, No. 2, likewise a citizen of Texas and a resident of the eastern district; the Central Trust Company of New York, a citizen of New York; the Farmers' Loan and Trust Company of New York, as trustee, a citizen of New York; Nelson S. Easton and James Rintoul, as trustees, citizens, and residents of New York; Benjamin A. Shepherd, trustee, a citizen of Texas; and many other persons and corporations, citizens of New York, Kentucky, Texas, and Louisiana; to impeach and vacate a certain decree of the Circuit Court entered in the consolidated cause hereafter mentioned.

The Houston and Texas Central Railway Company was a corporation and citizen of the State of Texas and a resident of the Eastern District of that State, owning a railway consisting of a main line from Houston to Dennison; a line from Hempstead to Austin, called the Western Division; and a line from Bremond to Ross, known as the Waco and Northwestern Division; and a large quantity of lands acquired from the State. The property of the company was subject to the lien of seven mortgages, known as the Main Line first mort-

gage, Western Division first mortgage, Waco and North-western Division first mortgage, Main Line and Western Division consolidated mortgage, Waco and Northwestern Division consolidated mortgage, Income and Indemnity mortgage, and General mortgage. The company made default January 1, 1885, in the payment of interest on its Main Line first mortgage bonds and its Western Division first mortgage bonds. On February 11, 1885, Nelson S. Easton and James Rintoul, citizens and residents of the State of New York, trustees under the Main Line first mortgage and Western Division first mortgage, filed their two bills in equity in the Circuit Court of the United States for the Eastern District of Texas against the Houston and Texas Central Railway Company as a corporation and citizen of the State of Texas for the purpose of enforcing the trust provided in the mortgages, protecting the trust property, obtaining proceedings for the sale of certain lands covered by the mortgages, and for other relief; and prayed for an accounting, an injunction, a decree of sale of part of the trust property, and for a receiver. These suits were numbered 183 and 184 on the equity docket. The railway company appeared and answered these bills.

On February 16, 1885, the Southern Development Company, a corporation organized under the laws of California and a citizen and resident of that State, in its own behalf and in behalf of all other persons similarly situated, who might intervene in the suit to protect their own interests, filed its bill of complaint in the Circuit Court against the railway company as a corporation organized under the laws of Texas, alleging among other things that it was a creditor of the defendant for large sums advanced for supplies, labor, operating and managing expenses, and other necessary expenses, which defendant had promised to pay out of its earnings; that the indebtedness was in equity a charge upon defendant's income and property; that there had been a diversion of the income and that by reason thereof a lien had resulted in complainant's favor which it was entitled to have enforced. The bill alleged the absolute insolvency of the railway company and that loss and injury would be occasioned by a sale of the property in

parcels, and prayed for the appointment of receivers and the payment of complainant's claim out of the rents, revenues, and earnings of the property. The railway company appeared in this. suit, which was numbered 185, and on February 20, 1885, an order was made by the Circuit Court appointing Benjamin G. Clark and Charles Dillingham joint receivers of all the property, real and personal, of said company. On the succeeding twentieth of April, the Southern Development Company amended its bill, making Nelson S. Easton and James Rintoul, trustees; the Farmers' Loan and Trust Company, a corporation and citizen of the State of New York; and Benjamin A. Shepherd, trustee, under the Income and Indemnity mortgage, a citizen of Texas and a resident of the Eastern District of that State, defendants thereto, and praying that accounts might be taken, liens and incumbrances marshalled, net earnings applied, and if the amounts realized should not be sufficient for the payment of the claim, that the property should be sold for that purpose. The railway company answered the bill on its merits, and the defendants Easton and Rintoul, trustees, filed demurrers.

March 18, 1885, the Farmers' Loan and Trust Company, a corporation and citizen of New York, filed its bill in equity in the Circuit Court against the railway company, which was numbered 188 on the equity docket, alleging that it was the trustee under the Waco and Northwestern Division first and consolidated mortgages, and the Main Line and Western Division consolidated mortgages; that the mortgagors had violated many of their agreements and that default had been made in the payment of interest; that the company was insolvent; that the suits hereinbefore mentioned were pending; that the trust property was in jeopardy ; and it prayed for an accounting, injunction and a decree of sale of part of the trust property and for a receiver of all the property of every description of the railway company, with the usual powers. The railway company answered this bill on the merits, June 22, 1885.

The Circuit Court made three orders on May 7, 1885, in these cases: In No. 185, as to sales of lands and their proceeds, and directing the receivers to account; in Nos. 183 and

184, making that order applicable to those cases; and in No. 188, making the same order as to that case.

January 21, 1886, Easton and Rintoul, trustees in the two mortgages involved in Nos. 183 and 184, citizens of the State of New York, filed two other bills in equity for the foreclosure and sale of the railway property covered by those mortgages; that to foreclose the Main Line first mortgage was numbered 198, and that to foreclose the Western Division first mortgage was numbered 199. In No. 198 complainants made the Houston and Texas Central Railway Company and Benjamin A. Shepherd, a citizen and resident of Texas, and trustee under the Income and Indemnity mortgage, defendants, and as to the Farmers' Loan and Trust Company averred that as trustees under the mortgages or deeds of trust, "hereinafter described, that company would be found benefited by, and it is to their advantage that, the judgment and relief hereinafter prayed for, or some part thereof, should be granted to your orators. That said property covered by the said first mortgage on said main line, as well as all the other property, assets, and effects of said railway company, being now in the hands of this court, by the receivership existing in respect of the same, and your orators thereby being required by law to institute this action in this court and to come before this tribunal, in order to reach the property in its possession, and to obtain its rights concerning the same, and all the parties interested in the property covered by said mortgage on the main line, as well as all the other mortgages and property of said railway company, being now before the court in said actions hereinbefore described as Nos. 183, 184, 185, and 188, on the equity docket of this court, the said Farmers' Loan and Trust Company may and should be made a party defendant in this cause irrespective of its citizenship. And said corporation should be brought in as a defendant herein by the order and direction of this court, and should be bound by the judgment and proceedings herein."

The record does not show that this company was made a defendant or appeared at this stage of the proceedings.

In No. 199 the same parties were joined as defendants and

a like averment made as to the Farmers' Loan and Trust Company. Process was issued under both of these bills against the railway company and Shepherd, trustee, and duly served upon them. Thereafter, and on April 24, 1886, the Farmers' Loan and Trust Company filed a bill in equity in the Circuit Court for the foreclosure of the general mortgage, which was numbered 201. The railway company was made sole party defendant, and the bill prayed for a sale of all the property of the railway company to satisfy the mortgage debt. Process was issued and served.

On May 26, 1886, an order was entered by Mr. Justice Woods and the Circuit Judge in the six suits upon the mortgages, whereby it was ordered, adjudged and decreed that no further proceedings should be taken in causes Nos. 183, 184, and 188, without notice to the railway company, and that causes Nos. 198, 199, and 201 should be consolidated under No. 198, under the name and style of "*Nelson S. Easton and James Rintoul, Trustees, and the Farmers' Loan and Trust Company, Trustee, against The Houston and Texas Central Railway Company and Benjamin Shepherd, Trustee, consolidated cause;*" that, in said cause Easton and Rintoul should stand as complainants, as trustees under the mortgages made by the defendant railway company, dated respectively July 1, 1866, and December 21, 1870; that the Farmers' Loan and Trust Company, expressly assenting thereto, should stand as complainant, as trustee under the mortgages made by the railway company, dated, respectively, June 16, 1873, October 1, 1872, May 1, 1875, and April 1, 1881; that Shepherd should stand as defendant, as trustee under the mortgage made by the railway company, dated May 7, 1877; that the bills filed in causes Nos. 198, 199, and 201 should stand as bills in the consolidated cause, and might be amended by either complainant, as it might be advised, and that any party might file an answer to any original or amended bill; and that in case any one or more of the bills filed by the complainants, in the causes consolidated, should be finally dismissed, the remaining bill or bills should continue to stand as the bill in such consolidated cause. On the same day an order was made in said

consolidated cause No. 198, appointing Nelson S. Easton, James Rintoul, and Charles Dillingham, receivers of all the property of the railway company, and directing Clark and Dillingham, as receivers in No. 185, to immediately transfer and deliver all said property to the receivers so appointed. May 27, 1886, and after the possession of all the property in controversy had passed into the hands of Easton and Rintoul and Dillingham, as receivers, the court made a decree dismissing the bill of the Southern Development Company in No. 185 for want of equity, and declared and directed that "all said property being now in the custody of the court, and such custody and control being continuous, the entry of this decree shall operate *ipso facto* a transfer of the legal custody of said property from said Clark and Dillingham to the said receivers in No. 198." Various amendments were subsequently filed.

The railway company answered in consolidated cause No. 198, September 3, 1886. The Farmers' Loan and Trust Company, though cocomplainant in the consolidated cause, answered the bills of Easton and Rintoul, trustees, August 2, 1886.

On April 30, 1888, Shepherd, trustee, with leave of court, filed a cross-bill in No. 198 to foreclose the Income and Indemnity mortgage, and the railway company answered admitting the truth thereof.

On May 1, 1888, the Farmers' Loan and Trust Company filed bills in the nature of cross-bills, with leave of court, to foreclose the Main Line and Western Division consolidated mortgage and the Waco and Northwestern Division consolidated mortgage. The railway company answered these bills May 2, 1888, and the Farmers' Loan and Trust Company answered Shepherd's cross-bill on the same day. All the mortgages were thus under foreclosure except the Waco and Northwestern Division first mortgage.

On May 4, 1888, the court made its decree of foreclosure and sale in consolidated cause No. 198. The property was sold under the decree September 8, 1888, at Galveston, Texas. The property covered by the Waco and Northwestern Division first mortgage was purchased subject to that mort-

gage by George E. Downs for $25,000, and all the residue of the property of the railway company was sold to Frederick P. Olcott, president of the Central Trust Company, for $10,580,000. The sale was duly confirmed December 4, 1888.

On December 23, 1889, Carey and others, as stockholders of the Houston and Texas Central Railway Company, filed their bill in the Circuit Court for the vacation of said sale and decree; and an amended bill February 18, 1890. The contents of these pleadings are largely set forth in *Carey* v. *Houston & Texas Railway*, 150 U. S. 170. The gravamen of the bill was that the decree was entered through collusion and fraud. Briefly, the bill alleged that prior to 1883, defendant Huntington, who, with his associates, controlled the Southern Development Company, formed a syndicate with them for the purpose of acquiring, in his own interest and in the interest of that company, and of the Southern Pacific Company, the control of the Houston and Texas Central Railway Company in such manner that the railway might be run solely in the interest of the syndicate and the Southern Pacific Company, the rights of the stockholders being effectually shut out and barred. The bill further alleged that in January, 1885, the holders of the first mortgage bonds presented their coupons for payment, and it was fraudulently contrived by Huntington and his associates so that the coupons were cashed and secretly taken up by the Southern Development Company, without notice to the holders thereof; that thereupon that company commenced suit against the Houston and Texas Central Railway Company in the Circuit Court, and in February, 1885, the appointment of receivers was procured in that suit, the order being made with the consent of the railway company through its solicitors; that subsequently defendants Easton and Rintoul, trustees, filed their bills in the Circuit Court for foreclosure, and the Farmers' Loan and Trust Company filed its bill, which said bills were numbered 198, 199, and 201, and the causes were by consent consolidated as No. 198; that the suit of the Southern Development Company was dismissed, and thereupon receivers of the railway company were ap-

pointed in the consolidated cause, the company through their counsel consenting.   It was also averred that in none of the mortgages was it provided that the failure to pay interest upon any of the bonds should be taken to precipitate the maturity of the principal, nor did they provide for nor permit the sale of the railway prior to the maturity of the principal of the bonds; and that the answer of the railway company in said suits expressly denied that the principal sum of the bonds had become due or demandable, and averred that the court had no power to decree a sale of the railway prior to the maturity thereof or prior to the sale of the lands covered by the mortgages.

The bill then set up an agreement for the reorganization of the railway company, and alleged that in pursuance thereof and of the scheme mapped out, complainants in the consolidated causes applied for and on consent procured to be entered the decree of May 4, 1888, for the foreclosure of the mortgages, and a sale of the property, and the sale followed accordingly.

The bill charged that " the said decree was and is absolutely invalid and void and beyond the power of the court to grant; that there was no foundation for said decree or jurisdiction in the court to award it, and that the same was entered by consent and agreement and without any investigation or adjudication by the court, but was the result of agreement simply, and was procured, as complainants allege on information and belief, by collusion and fraud on the part of said Huntington and his associates and the directors and officers of said Houston and Texas Central Railway Company, and was and is a part of the scheme to acquire possession of said railway in the interest of said Huntington and the said Southern Pacific Company without regard to the rights or interests of the holders of the stock of the said company No. 1 and in direct disregard of the provisions and terms of the mortgages; that the defences interposed that the principal of the mortgages had not become due and that the said railway could not be sold without a sale first of the lands and the other defences interposed were substantially abandoned and withdrawn as

part of the said wrongful and fraudulent scheme herein referred to; that the said defences were never submitted to the court for adjudication or determination, nor was evidence heard or offered to sustain the same, but the decree was the result of the agreement which the bondholders had made with the said Southern Pacific Company and Central Trust Company, and the rights of the stockholders were not considered or protected by any of the parties to the record in said cause, nor submitted to the court for adjudication or investigation, nor were the stockholders in any way advised or permitted to be informed of the transaction herein complained of."

It was further averred that the decree fixed no amount due, and no amount which the company was required to pay to redeem, and that it contradicted the provisions of the mortgages.

The organization of a company styled the Houston and Texas Central Railway Company, designated in the bill as No. 2, after possession under the sale was acquired, for the purpose of operating the railway, was then set up, and the terms on which the stockholders of the original company were informed September 1, 1889, they could participate in the new company, which required payment of an enormous and unnecessary assessment, and constituted an attempt to compel the stockholders of company No. 1 to turn over their stock to Huntington and his associates, etc. The prayer of the bill was that the decree rendered by the court May 4, 1888, in the consolidated cause, be vacated and set aside and adjudged to be fraudulent, collusive, illegal, and void, and that complainants be permitted to intervene and become parties defendant in said suit, and be heard and defend the same; that the sale of the railway and lands of the Houston and Texas Central Railway Company, No. 1, under said decree be vacated and set aside, and the said railway and lands be restored to the possession of the receivers; that defendants be enjoined temporarily and perpetually from delivering or recording any mortgage upon the property of the company referred to in said decree, and from issuing, alienating or parting with any of the shares of stock of the new or reorganized

Houston and Texas Central Railway Company, No. 2, or any bonds secured by mortgage upon any property claimed to be possessed by said company, or any stock or bonds issued or intended to be issued pursuant to the reorganization agreement; and for general relief.

The principal defendants at first demurred, and then answered the bill, denying the allegations upon which complainants sought to impeach the validity of the decree of the Circuit Court in the foreclosure proceedings and the other transactions referred to. Complainants filed replications. A motion for an injunction *pendente lite* was denied. 45 Fed. Rep. 438.

The cause came on for final hearing on the pleadings and proofs November 16, 1892, and the Circuit Court entered a final decree dismissing the bill as to all the defendants with costs. 52 Fed. Rep. 671.

Complainants prayed two appeals from this decree, one to the Circuit Court of Appeals for the Fifth Circuit, and the other to this court. The appeals were allowed, citations issued and assignments of errors filed. On motion of appellees, the appeal to this court was dismissed November 13, 1893. *Carey v. Houston & Texas Central Railway,* 150 U. S. 170. The case on the appeal taken to the Circuit Court of Appeals was heard by that court, Circuit Judge McCormick presiding, and on June 5, 1894, being one of the days of November term, 1893, a decree was rendered affirming the decree of the Circuit Court.

May 2, 1895, a petition was presented to Circuit Judge McCormick, praying the allowance of an appeal from the decree to this court, which on the same day was allowed by an order in writing upon the petition, and at the same time a citation was signed, and a cost bond approved. The petition for appeal and the order allowing the same and the bond and an assignment of errors were all filed May 2, 1895, in the office of the clerk of the Circuit Court of Appeals. The record was filed here June 4, 1895, and appellees now move to dismiss the appeal.

*Mr. J. Hubley Ashton, Mr. E. B. Kruttschnitt,* and *Mr. Adrian H. Joline* for the motion.

*Mr. Jefferson Chandler, Mr. A. J. Dittenhoefer, Mr. George Clark,* and *Mr. Russell H. Landale,* opposing.

MR. CHIEF JUSTICE FULLER delivered the opinion of the court.

By the fifth section of the judiciary act of March 3, 1891, c. 517, 26 Stat. 826, it is provided that appeals may be taken from the Circuit Courts directly to this court " in any case in which the jurisdiction of the court is in issue; in such cases the question of jurisdiction alone shall be certified to the Supreme Court from the court below for decision." And we held in respect of the direct appeal to this court taken from the decree of the Circuit Court in this cause that such an appeal was not authorized simply because the jurisdiction of the Circuit Court over another suit previously determined by the same court, might be involved, and we said: " It is the jurisdiction of the court below over the particular case in which the appeal from the decree therein is prosecuted, that, being in issue and decided against the party raising it and duly certified, justifies such an appeal directly to this court. This suit to impeach the decree of May 4, 1888, and to prevent the consummation of the alleged plan of reorganization, was a separate and distinct case, so far as this inquiry is concerned, from a suit to foreclose the mortgages on the railroad property; and no question of jurisdiction over the foreclosure suit or the rendition of the decree passed therein can be availed of to sustain the present appeal from the decree in this proceeding." *Carey* v. *Houston & Texas Central Railway,* 150 U. S. 170, 180.

We are quite content with the conclusion there reached, for this suit is in itself unquestionably a distinct suit in the sense in which those words were used in disposing of the former appeal; and in respect of it the jurisdiction of the Circuit Court was not in issue, nor was any question of juris-

diction certified. Carey and his cocomplainants did not intervene in consolidated cause No. 198, and seek to have the question of the jurisdiction of the Circuit Court therein certified to this court and appeal directly therefrom, nor did they file a bill of review for error of law apparent in that the Circuit Court took jurisdiction as a court of the United States. The gravamen of the bill they did file was fraud and collusion, and the allegations of want of jurisdiction relate to prematurity in the attempt to foreclose or to other matters not bearing on the jurisdiction of the Federal courts as such. And the prayer was that the decree be vacated and adjudged fraudulent, collusive, illegal, and void; that complainants might be permitted to intervene and become parties defendant; that the sale of the railroad and lands of the company under the decree be vacated and set aside; "and the said railway and lands be restored to the possession of the receivers appointed by this court or such other officers or receivers as the court may name;" for injunction and general relief.

But the question now before us is whether the decree of the Circuit Court of Appeals affirming the decree of the Circuit Court upon the merits is made final by the sixth section of the act of March 3, 1891, which provides that "the judgments or decrees of the Circuit Courts of Appeals shall be final in all cases in which the jurisdiction is dependent entirely upon the opposite parties to the suit or controversy, being aliens and citizens of the United States or citizens of different States; also in all cases arising under the patent laws, under the revenue laws, and under the criminal laws and in admiralty cases."

The suits " of a civil nature, at common law or in equity," of which the Circuit Courts of the United States have original cognizance, are enumerated in the first section of the judiciary act of March 3, 1887, c. 373, 24 Stat. 552, as corrected by the act of August 13, 1888, c. 866, 25 Stat. 433.

It is denied that the jurisdiction of the Circuit Court in the present suit depended entirely or at all upon the fact that the opposite parties were citizens of different States, and insisted

that jurisdiction was entertained because it was a bill to set aside a foreclosure decree entered in the Circuit Court by consent and in pursuance of a fraudulent plan to reorganize the company, and the *res* was in possession of the court whether "rightfully or wrongfully." The ground of jurisdiction thus suggested is not a ground of Federal jurisdiction, but of the exercise of the powers of courts of superior general jurisdiction; and it undoubtedly exists over all suits and proceedings ancillary, auxiliary, or supplemental to other suits, of which the Circuit Courts have cognizance as courts of the United States.

The character of this jurisdiction is thus treated by Mr. Justice Miller in *Minnesota Co.* v. *St. Paul Co.*, 2 Wall. 609, 633, where, speaking for the court, he said: "The question is not whether the proceeding is supplemental and ancillary or is independent and original, in the sense of the rules of equity pleading; but whether it is supplemental and ancillary, or is to be considered entirely new and original, in the sense which this court has sanctioned with reference to the line which divides the jurisdiction of the Federal courts from that of the state courts. No one, for instance, would hesitate to say that, according to the English chancery practice, a bill to enjoin a judgment at law, is an original bill in the chancery sense of the word. Yet this court has decided many times, that when a bill is filed in the Circuit Court, to enjoin a judgment of that court, it is not to be considered as an original bill, but as a continuation of the proceeding at law; so much so, that the court will proceed in the injunction suit without actual service of subpœna on the defendant, and though he be a citizen of another State, if he were a party to the judgment at law."

In *Rouse* v. *Letcher*, 156 U. S. 47, 50, we have already adjudged that the sixth section authorizes no appeal to this court from a decree of a Circuit Court of Appeals in an ancillary or supplemental suit or proceeding in the Circuit Court, where the jurisdiction of that court in the main or original suit depends entirely upon the parties being citizens of different States. In that case the main foreclosure suit was between

citizens of different States, and receivers had been appointed. A proceeding by intervention was afterwards instituted in the Circuit Court against the receivers, who appealed to this court from the decree of the Circuit Court of Appeals against them, and the appeal was dismissed because the opposite parties to the foreclosure suit were citizens of different States, and the decree was therefore made final by the statute. And we said :

" And since where jurisdiction would not obtain in an independent suit, an intervening proceeding may nevertheless be maintained as ancillary and supplemental under the jurisdiction already subsisting, such proceeding is to be regarded in that aspect, even in cases where the Circuit Court might have had jurisdiction of an independent action. Here, as we have said, the jurisdiction of the Circuit Court was invoked in the first instance by the filing of the bill, and it was under that jurisdiction that appellee intervened in the case, and that jurisdiction depended entirely upon diverse citizenship. . . . If the word 'controversy' added anything to the comprehensiveness of the section, the fact remains that the exercise of the power of disposition over this intervention, whether styled suit or controversy, was the exercise of power invoked at the institution of the main suit, and it is to that point of time that the inquiry as to the jurisdiction must necessarily be referred. *Colorado Central Mining Co.* v. *Turck*, 150 U. S. 138. Nor can the conclusion be otherwise because separate appeals may be allowed on such interventions. Decrees upon controversies separable from the main suit may indeed be separately reviewed, but the jurisdiction of the Circuit Court over such controversies is not, therefore, to be ascribed to grounds independent of jurisdiction in the main suit."

*Rouse* v. *Letcher* was followed in *Gregory* v. *Van Ee*, 160 U. S. 643, 646, and it was there observed :

" The Circuit Courts of the United States have cognizance of suits as provided by the acts of Congress, and when their jurisdiction as Federal courts has attached, they possess and exercise all the powers of courts of superior general jurisdiction. Accordingly they entertain and dispose of interventions and the

like on familiar and recognized principles of general law and practice, but the ground on which their jurisdiction as courts of the United States rests is to be found in the statutes, and to that source must always be attributed.

"Manifestly, the decree in the main suit cannot be revised through an appeal from a decree on ancillary or supplemental proceedings, thus accomplishing indirectly what could not be done directly. And even if the decree on such proceedings may be in itself independent of the controversy between the original parties, yet if the proceedings are entertained in the Circuit Court because of its possession of the subject of the ancillary or supplemental application, the disposition of the latter must partake of the finality of the main decree, and cannot be brought here on the theory that the Circuit Court exercised jurisdiction independently of the ground of jurisdiction which was originally invoked as giving cognizance to that court as a court of the United States."

Complainants and defendants in the bill under consideration were not all citizens of different States, and the jurisdiction of the Circuit Court over the suit did not purport to be founded upon diverse citizenship. Independently, therefore, of the foreclosure suit, the decree in which was sought to be impeached, the bill was not sustainable in the Circuit Court.

It is very well settled that a bill in equity by a corporation or the stockholders of a corporation in the Circuit Court to set aside a final decree of that court against the corporation in a foreclosure suit upon the ground that such a decree was obtained by collusion and fraud, and the court had no jurisdiction to make it, is an ancillary suit and a continuation of the main suit so far as the jurisdiction of the Circuit Court as a court of the United States is concerned. *Minnesota Co.* v. *St. Paul Co.*, 2 Wall. 609; *Krippendorf* v. *Hyde*, 110 U. S. 276; *Pacific Railroad* v. *Missouri Pacific Railway*, 111 U. S. 505, 522. The bill in the latter case was brought in the Circuit Court for the Eastern District of Missouri by a corporation, a citizen of Missouri, against another corporation, also a citizen of Missouri, other citizens of Missouri, and others, alleging fraud and collusion in the original foreclosure suit

and praying that the decree of foreclosure and sale be set aside. Mr. Justice Blatchford, delivering the opinion of the court, said:

"The bill falls within recognized cases which have been adjudged by this court, and have been recently reviewed and reaffirmed in *Krippendorf* v. *Hyde*, 110 U. S. 276. On the question of jurisdiction the suit may be regarded as ancillary to the Ketchum suit, so that the relief asked may be granted by the court which made the decree in that suit, without regard to the citizenship of the parties, though partaking so far of the nature of an original suit as to be subject to the rules in regard to the service of process which are laid down by Mr. Justice Miller in *Pacific Railroad* v. *Missouri Pacific Railway*, 1 McCrary, 647. The bill, though an original bill in the chancery sense of the word, is a continuation of the former suit, on the question of the jurisdiction of the Circuit Court. *Minnesota Co.* v. *St. Paul Co.*, 2 Wall. 609, 633."

The same principle was applied to a bill by the stockholders of a corporation filed for the purpose of impeaching a decree of foreclosure and sale, by Mr. Justice Jackson, then Circuit Judge, in *Foster* v. *Mansfield &c. Railroad Co.*, 36 Fed. Rep. 627, 628, in the Circuit Court for the Northern District of Ohio, where he said:

"There is no want of jurisdiction growing out of the fact that some of the defendants to the present suit are citizens of the same State (Ohio) with the complainant, inasmuch as this suit may properly be regarded as ancillary or supplemental to the original suit in which the decree complained of was made. It is well settled that in such cases suit may be maintained without regard to the citizenship of the parties. *Minnesota Co.* v. *St. Paul Co.*, 2 Wall. 609; *Krippendorf* v. *Hyde*, 110 U. S. 276; *Railroad Co.* v. *Railroad Co.*, 111 U. S. 505. It is also well settled that a shareholder may interpose and set the machinery of the law in motion for the protection of corporate rights, or the redress of corporate wrongs, when the corporate management, after proper demand, refuses or fails to act in the matter."

The decree in that case was affirmed by this court, 146 U. S.

88, and there is a marked resemblance between the bill exhibited there and that before us.

We regard it as not open to argument that the jurisdiction of the Circuit Court, as a court of the United States, over this suit rested on the jurisdiction of that court over the suit in which the decree of May 4, 1888, was rendered, and we think it clear that that jurisdiction depended entirely upon diverse citizenship.

The bill in No. 201 was filed by the Farmers' Loan and Trust Company, trustee, a citizen of New York, against the Houston and Texas Central Railway Company, a citizen of Texas, April 24, 1886, to foreclose the general mortgage, and no other party was named as defendant. The ground of Federal jurisdiction was diverse citizenship. How efficacious a decree could have been rendered in that cause, if it had stood alone, we need not consider, nor inquire when persons who might be considered necessary parties may be dispensed with as such. It may be noted, however, that the general mortgage was the last mortgage, and prior incumbrancers, the validity of whose incumbrances is not drawn in question, are not indispensable parties to a bill to foreclose a mortgage so situated. *Hagan* v. *Walker*, 14 How. 29, 37; Jones on Mortgages, § 1439.

The bills in Nos. 198 and 199 were filed by Easton and Rintoul, trustees, citizens of New York, January 21, 1886, against the Houston and Texas Central Railway Company and Benjamin A. Shepherd, trustee, both citizens of Texas, to foreclose the Main Line first mortgage and the Western Division first mortgage, and it was alleged that the Farmers' Loan and Trust Company, trustee, under subsequent mortgages, should be made a party defendant and brought in by the order and direction of the court, in view of the fact that the property was in the Circuit Court's possession, and complainants had therefore been obliged to institute their suit therein. These cases were consolidated by the order of May 26, 1886, the parties being arranged for the purposes of jurisdiction on the one side or the other of the matters in dispute, as indicated in *Pacific Railroad* v. *Ketchum*, 101 U. S. 289, and, unless that

order is to be disregarded, the question whether either case lacked an indispensable party, became immaterial. Thereafter cross-bills and answers were filed as has been stated. The jurisdiction over these three separate suits and over the consolidated cause depended entirely upon diverse citizenship, and if maintainable as to either of them, could be maintained as to all by reason of lawful possession of the *res.*

In No. 185, the Southern Development Company, a corporation and citizen of California, filed its bill against the railway company as a corporation and citizen of Texas, February 16, 1885, the jurisdiction resting upon diverse citizenship, and in that suit the court appointed receivers February 20, 1885, and took and retained possession of the property under that receivership up to May 26, 1886, when it was transferred to the receivers appointed in the consolidated cause, who thereby became receivers under each of the separate bills so consolidated, all of which had in fact been filed long after the property was in the possession of the court. Certainly, possession under one or the other of these bills drew to the court the right to decide upon conflicting claims to the ultimate possession and control of the property, to marshal all liens upon it, and to enforce them. *Morgan's Co.* v. *Texas Central Railway,* 137 U. S. 171, 201.

We conclude, therefore, that as the jurisdiction of the Circuit Court for the Eastern District of Texas as a court of the United States was invoked throughout the litigation upon the ground of diverse citizenship, and as this bill must be regarded as ancillary, auxiliary, or supplemental to the foreclosure suit, or, as it were, in continuation thereof, the decree of the Circuit Court of Appeals was made final by the sixth section of the act of March 3, 1891, and the appeal to this court from that decree will not lie.

*Appeal dismissed.*

Mr. Justice PECKHAM was not a member of the court when this motion was submitted, and took no part in its disposition.