PELL et al. v. McCABE et al.

(Circuit Court of Appeals, Second Circuit. January 30, 1919.)

No. 136.

1. COURTS ⬁264(1)—FEDERAL COURTS—ANCILLARY JURISDICTION.

If a federal court has jurisdiction of the principal suit, it also has jurisdiction of any ancillary proceeding in that suit, without regard to the citizenship of the parties, the amount in controversy, or any other factor that would ordinarily determine jurisdiction.

2. COURTS ⬁264(4)—ANCILLARY JURISDICTION.

An ancillary suit may be maintained, inter alia, to prevent the relitigation in other courts of the issues heard and adjudged by that court in the original suit, and to protect the titles and rights acquired under its judgment or decree from attack based on the theory that the adjudication in the original suit was illegal or ineffective.

3. COURTS ⬁264(4)—JURISDICTION OF FEDERAL COURT—ANCILLARY SUIT.

An order confirming a composition by a bankrupt partnership, which provided that creditors who assented should be deemed to have released a third person, not adjudicated a bankrupt, and whose relation to the firm was not determined, from liability on any claim against the bankrupts, was not an adjudication that such third person was not liable for such claims, and a suit to enjoin an action against him, based on fraud and charging him as a partner, brought in another jurisdiction by persons who filed no claim and did not assent to the composition, is not ancillary to the bankruptcy proceeding.

Appeal from the District Court of the United States for the Southern District of New York.

Suit in equity by Stephen H. P. Pell and others against W. Gordon McCabe, Jr., and another. Decree for defendants, and complainants appeal. Modified and affirmed.

For opinion below, see 254 Fed. 356.

This suit is brought by plaintiffs for the purpose of enjoining the defendants from proceeding in an action now pending in the United States District Court for the Eastern District of South Carolina, so far as it proceeds against Robert M. Thompson as a general partner of S. H. P. Pell & Co. upon any claim which was provable in bankruptcy. It also seeks to enjoin the defendants from continuing that action in South Carolina, or instituting any other action upon transactions between defendants and plaintiffs, or upon the plaintiffs' fraud in said dealings, which was not at

⬁For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the time known to defendants, and it further seeks to enjoin defendants from attacking, questioning, or challenging the power and jurisdiction of the United States District Court for the Southern District of New York to make certain orders to which reference is hereinafter made.

The South Carolina suit is for the recovery of moneys said to have been obtained from the plaintiffs by the defendants by fraud and deceit. Neither plaintiffs nor defendants reside within the Southern district of New York.

The plaintiffs were members of the firm of S. H. P. Pell & Co., cotton brokers on the New York Cotton Exchange. The defendants are residents of South Carolina, who prior to December 23, 1912, employed the brokers mentioned to buy and sell cotton on their behalf on the New York Cotton Exchange.

The plaintiffs contend that by reason of certain proceedings had in the United States District Court for the Southern District of New York in the bankruptcy proceedings of S. H. P. Pell & Co. these defendants cannot maintain an action, in South Carolina or anywhere, against these plaintiffs, and that they should be enjoined from doing so. The facts with reference to those bankruptcy proceedings are as follows:

On July 31, 1914, S. H. P. Pell & Co., New York Cotton Exchange brokers made a general assignment for the benefit of creditors.

On August 3, 1914, an involuntary petition in bankruptcy was filed by three creditors having provable claims exceeding $500 in the District Court for the Southern District of New York to have the firm of S. H. P. Pell & Co., and Charles A. Kittle and Howland H. Pell, individually, composing the said firm, adjudicated involuntary bankrupts. Robert M. Thompson was not made a party by that petition. S. H. P. Pell & Co. was, however, a limited partnership formed under the laws of the state of New York. The firm consisted of the two Pells above named and Kittle as general partners, and Robert M. Thompson as a special partner.

Receivers in bankruptcy were appointed, who immediately qualified When they took possession of the assets of the firm, they found among them a large amount of securities and stocks which were claimed to be the individual property of Robert M. Thompson.

On October 2, 1914, the alleged bankrupts filed schedules, in which was set forth the indebtedness of S. H. P. Pell & Co. to Robert M. Thompson in the sum of $3,373,082.30, and that defendants were debtors in the sum of $261.52.

On October 19th of the same year the receivers of S. H. P. Pell & Co. notified the defendants that they were scheduled as debtors in the schedules filed in the bankruptcy court for the sum of $261.52, and on the same day further demanded payment from the defendants of a claim for $91,467.57 in favor of the bankrupts. Pell & Co. had, prior to December, 1913, acted as cotton brokers on the New York Cotton Exchange, and claimed that the defendants owed them $91,467.57 and $261.52.

On November 21st of the year aforesaid the defendants remitted to the receivers the sum of $261.52, being the amount previously demanded; and on November 23d and 28th of that year petitions were filed in the bankruptcy proceedings, which prayed that Robert M. Thompson be made a party to those proceedings and adjudicated a general partner and a bankrupt.

Negotiations were had at this time between the bankruptcy receivers, the New York Cotton Exchange, Robert M. Thompson, and the bankrupts (firm and individuals) for:

"(1) The adjustment and settlement of the claims of the New York Cotton Exchange creditors, aggregating over $2,000,000.

"(2) The threatened sale of certain securities loaned by Robert M. Thompson to the bankrupt firm, and large deficiency, and the assumption by Robert M. Thompson of certain firm liabilities aggregating $2,100,000, and his agreement to hold the bankrupt estate harmless.

"(3) The withdrawal of the scheduled claim of Robert M. Thompson against the bankrupt estate for $3,373,082.50, and the release of the bankrupt estate therefrom.

"(4) The settlement of all questions and disputes with release and discharge of Robert M. Thompson and the dismissal of the intervening petitions against Robert M. Thompson."

The result was a plan of settlement in pursuance of which the bankrupts made an offer of compromise and composition which contained the following provisions concerning Robert M. Thompson:

"First. This offer is made in consideration of the discharge of the bankrupts, Stephen H. P. Pell, Charles A. Kittle, and Howland H. Pell, from their debts, both individual and partnership, and of the release of Robert M. Thompson from any and all liability to said S. H. P. Pell & Co., and from any and all liability to any creditor of S. H. P. Pell & Co."

"Ninth. Each and every creditor of S. H. P. Pell & Co. who shall assent to this offer of composition shall, upon the final confirmation of such composition by the court, be deemed conclusively by his said assent thereto to have released Robert M. Thompson of and from any and all liability to such creditor on account of any connection of said Robert M. Thompson with S. H. P. Pell & Co. or any transaction of said Robert M. Thompson by or through S. H. P. Pell & Co."

"Twelfth. It shall be adjudged herein * * * there shall be no liability to said Thompson on the part of the estate of S. H. P. Pell & Co. by reason of any rights or claims of any person. * * *

"Fourteenth. The intervening petitions herein of Logan and Bryan and of Heineken and Vogelsang et al. shall be dismissed, without costs."

The intervening petitions above referred to, which were to be dismissed, were those asking to have Thompson declared a general partner of S. H. P. Pell & Co. and adjudicated a bankrupt.

The bankruptcy court, by formal order on January 25, 1915, confirmed the proposed compromise and offer of composition which had previously received the consent in writing of more than a majority in number and 90 per cent. in amount of the creditors.

It is not denied that Robert M. Thompson duly carried out and performed all the terms of the agreement of compromise and the order of confirmation of January 25, 1915, and thereafter, and in accordance with the order of confirmation aforesaid, the bankrupts and the bankruptcy receivers conveyed all the bankrupt estate to John W. Jay, who thereafter duly transferred it to the Guaranty Trust Company as substituted trustee for the bankrupt estate.

On June 16, 1916, the Guaranty Trust Company began an action in the United States District Court for the Southern District of New York against the defendants herein to recover the sum of $91,467.57, alleged to be due from defendants to the firm of S. H. P. Pell & Co. on account of transactions conducted by that firm on the New York Cotton Exchange as the defendants' brokers.

On March 29, 1918, the defendants began an action in the court of common pleas for the county of Charleston, in the state of South Carolina, wherein the defendants resided, against the firm of S. H. P. Pell & Co., alleged to be formed of Stephen H. P. Pell, Charles A. Kittle, Howland H. Pell, and Robert M. Thompson, to recover $1,500,000 damages for fraud perpetrated in and arising out of transactions had by the defendants with S. H. P. Pell & Co., while that firm was acting as their brokers in transactions on the New York Cotton Exchange. The liability of Robert M. Thompson in said action is placed on the ground of his being a general partner.

Robert M. Thompson, one of the plaintiffs herein, and who was the only defendant served with process in the South Carolina action, caused the action to be removed from the state court into the United States District Court, wherein it was understood to be pending when this case was argued in this court, and wherein, so far as we are informed, it is still pending.

In the suit, now under review in this court, the court below dismissed the bill.

Myers & Goldsmith, of New York City (Emanual J. Myers and Gordon S. P. Kleeberg, both of New York City, of counsel), for appellants.

William St. John Tozer, of New York City (William St. John Tozer, of New York City, of counsel), for appellees.

Before WARD and ROGERS, Circuit Judges, and KNOX, District Judge.

ROGERS, Circuit Judge (after stating the facts as above). [1] Inasmuch as it appears that neither the plaintiffs nor the defendants reside within the Southern district of New York, the court below clearly was without jurisdiction of the suit, now under review, as an original action. But it is said that this suit is not brought as an original suit, but as a dependent and ancillary suit, which has direct reference to a matter already litigated in the bankruptcy proceedings in the District Court for the Southern District of New York relating to the firm of S. H. P. Pell & Co. and the several persons alleged to constitute that firm. In Street's Federal Equity Practice, vol. 2, § 1229, that writer says:

"It is a rule, subject to but one exception, that jurisdiction in an ancillary proceeding is supported by the jurisdiction of the court in the main, or principal cause. Hence the ordinary jurisdictional averments may be dispensed with in such a proceeding. If a court has jurisdiction of the principal suit, it also has jurisdiction of any ancillary proceeding in that suit. Neither the citizenship of the parties, nor the amount in controversy, nor any other factor that would ordinarily determine jurisdiction, has any bearing on the right of the court to entertain that proceeding."

The one exception above referred to relates to an ancillary receivership, and with that we are not now concerned. The right of a federal court to sustain jurisdiction of an ancillary suit, without reference to the citizenship of the parties, was fully considered in Krippendorf v. Hyde, 110 U. S. 276, 4 Sup. Ct. 27, 28 L. Ed. 145, which reviewed the authorities. And see Pacific Railroad of Missouri v. Missouri Pacific Railway Co., 111 U. S. 505, 4 Sup. Ct. 583, 28 L. Ed. 498; Johnson v. Christian, 125 U. S. 642, 645, 8 Sup. Ct. 989, 31 L. Ed. 820; Carey v. Houston & Texas Central Ry. Co., 161 U. S. 115, 16 Sup. Ct. 537, 40 L. Ed. 638; Eichel v. United States Fidelity & Guaranty Co., 245 U. S. 102, 104, 38 Sup. Ct. 47, 62 L. Ed. 177.

The jurisdiction of a court over a particular subject-matter and that court's power to apply a remedy no doubt are co-extensive; so that demands which are ancillary to the main action may be taken cognizance of by the court and determined in aid of its authority over the principal matter, and a court may entertain proceedings ancillary to its judgment or decree, for the jurisdiction it originally acquired is not exhausted by the entry of the judgment, and the power is still in the court to issue all proper process and take all proper proceedings for the enforcement of its judgment. All this is familiar doctrine and well-established law.

[2] An ancillary suit may be maintained: (1) To aid, enjoin, or regulate the original suit. (2) To restrain, avoid, explain, or enforce the judgment or decree entered in the original suit. (3) To enforce or adjudicate liens or claims to property in the custody of the court in the original suit. (4) To prevent the relitigation in other courts of the issues heard and adjudged in the original suit, and to protect the titles and rights acquired under its judgment or decree from attack based on the theory that the adjudication in the original suit was illegal or in-

effective. Riverdale Cotton Mills v. Alabama & Georgia Manuf. Co., 198 U. S. 188, 25 Sup. Ct. 629, 49 L. Ed. 1008; Julian v. Central Trust Co., 193 U. S. 93, 112, 113, 24 Sup. Ct. 399, 48 L. Ed. 629; Carey v. Houston & Texas Ry. Co., 161 U. S. 115, 126, 127, 16 Sup. Ct. 537, 40 L. Ed. 638; St. Louis & San Francisco Ry. Co. v. McElvain (D. C.) 253 Fed. 123, 128.

In Bates on Federal Equity Procedure, vol. 1, § 97, the doctrine is summarized as follows:

"A bill filed to continue a former litigation in the same court, or which relates to some matter already partly litigated in the same court, or which is an addition to a former litigation in the same court, by the same parties or their representatives standing in the same interest, or to obtain and secure the fruits, benefits, and advantages of the proceedings and judgment in a former suit in the same court by the same or additional parties, standing in the same interest, or to prevent a party from using the proceedings and judgment of the same court for fraudulent purposes or to restrain a party from using a judgment to perpetrate an injustice, or obtain an inequitable advantage over other parties to the former judgment or proceeding, or to obtain any equitable relief in regard to, or connected with, or growing out of, any judgment or proceeding at law rendered in the same court, or to assert any claim, right or title to property in the custody of the court, or for the defense of any property rights, or the collection of assets of any estate being administered by the court, is an ancillary suit."

[3] We do not question but that the District Court for the Southern District of New York may enforce and protect its jurisdiction as a court of bankruptcy, when appealed to by a supplementary or ancillary bill to enforce its orders, sustain its jurisdiction, and protect parties in the enjoyment of rights secured to them under its orders. This is so, not only where jurisdiction is reserved or still retained, but even afterwards, where the result would be a relitigation of the same subject-matter between the same parties. In re Swofford (D. C.) 180 Fed. 549.

But the difficulty with the maintenance of this suit is that it cannot be regarded as in any proper sense an ancillary suit. It was instituted upon the theory that the proceedings in the District Court for the Southern District of New York in the bankruptcy matter of S. H. P. Pell & Co. discharged Stephen H. P. Pell & Co., as a firm, and Stephen H. Pell, Charles A. Kittle, and Howland H. Pell, individually, from all claims against the firm of S. H. P. Pell & Co., and that it also discharged therefrom Robert M. Thompson. But this is to lose sight of the terms of the composition, which provided for the release of Thompson—

"from any and all liability to any creditor of S. H. P. Pell & Co. who shall assent hereto, on account of any connection of said Robert M. Thompson with said firm, or any transaction of said Robert M. Thompson by or through said firm."

The release of Thompson was to apply only to those who specifically assented thereto, and there is no allegation anywhere in the complaint in the present action that the defendants herein assented to the composition. An examination of the record of the former proceedings shows that Thompson was not adjudicated a bankrupt, never filed schedules, and never made any offer of composition. The offer of

composition was an offer made by the two Pells and Kittle. Moreover, Thompson could not have offered a composition, as section 12 of the Bankruptcy Act expressly provides that a bankrupt shall not offer terms of composition—

"before he has been examined in open court or at a meeting of his creditors, and has filed in court the schedule of his property and lists of his creditors, required to be filed by bankrupts. * * *"

An examination of the offer of composition made by the Pells and Kittle, and of the order confirming the same, discloses that in neither is any reference made to the question whether Thompson was a member of the firm of S. H. P. Pell & Co. as a general or special partner. There was no adjudication of that question in that proceeding. There was no adjudication in that proceeding on the subject-matter involved in the South Carolina action; and if the defendants here had appeared in that proceeding and opposed the composition, which they did not, they could not be enjoined from suing in another court. Friend v. Talcott, 228 U. S. 27, 33 Sup. Ct. 505, 57 L. Ed. 718. In the case cited the court holds that a creditor who had unsuccessfully opposed a composition and a discharge in bankruptcy on the ground of fraud in creating the debt, and accepted a dividend, and who then sued for the balance on the ground that the debt was excepted from the discharge, had not waived his right to sue on the tort by accepting the dividend; and the court also held that the granting of the discharge was not res judicata of the claim for the balance of the debt.

In the instant case the defendants, who have brought the South Carolina action, deny that they knew of the existence of their claims until long after the bankruptcy proceedings. Their allegation is that they did not know that they had been defrauded by S. H. P. Pell & Co. until some time after July 1, 1916. The order of confirmation of the composition agreement was entered on January 25, 1915. The allegations of fraud contained in the complaint in the South Carolina action may be found in the margin.[1]

[1] "That in the course of the employment of defendants by plaintiffs aforesaid, plaintiffs sent to defendants certain orders for the purchase and sale of cotton as aforesaid, which defendants agreed and promised to execute upon the said New York Cotton Exchange. That defendants not only neglected, failed, and omitted so to execute the said orders, but falsely and fraudulently stated, reported, and represented to plaintiffs that the said orders had been duly executed upon the said Exchange, and in accordance with the by-laws, rules, and regulations thereof, and falsely and fraudulently charged plaintiffs' account with such sums as would have been advanced by defendants, and with such sums as would have been earned by defendants, if said orders of plaintiffs had in fact been so executed by defendants as by them falsely and fraudulently stated, reported, and represented to plaintiffs.

"That from time to time during said period said defendants rendered to plaintiffs various statements wherein defendants falsely and fraudulently charged plaintiffs with the purchase price of about one hundred and fifty-seven thousand (157,000) bales of cotton in the amount of approximately ten million one hundred and ninety-three thousand nine hundred and ninety dollars ($10,193,990), and by said statements falsely and fraudulently represented to plaintiffs such cotton to have been purchased by defendants for plaintiffs' account in accordance with plaintiffs' instructions and with the by-laws, rules, and regulations of the said New York Cotton Exchange, and thereby falsely and

The South Carolina action is based on fraud and deceit, and is of such a nature that the tort claim it asserts was not provable in bankruptcy, even if the plaintiffs in that action had known of the facts of the claim in time to have asserted them in the bankruptcy proceedings. Whether the tort might have been waived and a provable claim in bankruptcy made, based on an implied contract, if the facts had been known, we need not consider, as the allegation is that the facts were not known, and, if not known, no such course could have been adopted. And section 17 of the Bankruptcy Act (Act July 1, 1898, c. 541, 30 Stat. 550 [Comp. St. § 9601]) declares that—

"A discharge in bankruptcy shall release a bankrupt from all of his provable debts, except such as * * * (4) were created by his fraud * * * while acting * * * in any fiduciary capacity."

And the fraud complained of was committed, it is alleged, while the defendants in the South Carolina action were employed by the plaintiffs in that action as cotton brokers to buy and sell cotton for the account and risk of the plaintiffs, and such fraud was in connection therewith.

The bill of complaint in the present suit is exceedingly complicated, and raises a number of questions which the court below did not find it necessary to determine, and which we do not find it necessary to determine. The court below found in the bill no ground for equitable intervention, even if all the allegations the bill contains be assumed as true. We are in full agreement with that court in believing that the bill is without equity. It was properly dismissed, and, being dismissed for want of jurisdiction, the decree is to be modified to provide that the dismissal is without prejudice.

Decree, as modified, is affirmed.

Judge WARD was present at the argument and participated in the subsequent discussion of the case and concurred in the result. He has not read this opinion, being temporarily absent from the country at the time it was prepared and filed.

fraudulently represented to plaintiffs that the amount of the purchase price thereof had been duly paid, laid out, and expended by defendants for and on account of plaintiffs, and that the amount of defendants' commissions charged to plaintiffs in said statements had been duly earned by defendants in and about the purchase and sale of the cotton so falsely represented to plaintiffs to have been purchased for their account and to be due and owing to defendants."