CRAIG v. DORR et al.

(Circuit Court of Appeals, Fourth Circuit. May 1, 1906.)

No. 624.

1. COURTS—JURISDICTION OF FEDERAL COURTS—ANCILLARY PROCEEDINGS BY CROSS-BILL.

A bill in equity was filed in a federal court to set aside deeds to certain lands, both the grantor and grantees in such deeds being made defendants. Such grantees filed a cross-bill against the grantor co-defendant to recover purchase money paid him for the land, and for the cancellation of notes given for deferred payments in case the conveyances should be held invalid. Subsequently a decree was entered by consent of such grantees, to which their codefendant did not object, granting to complainant the relief prayed for, but retaining the case for determination of the matters arising on the cross-bill. Issue was joined thereon, and after a hearing a decree was entered in favor of the complainants therein. *Held*, that the cross-bill was ancillary to the original suit, growing directly out of the matters involved therein, and was within the jurisdiction of the court, without regard to the citizenship of the parties thereto, and that the entry of the decree on the original bill did not deprive the court of jurisdiction to retain and try the issues on the cross-bill.

[Ed. Note.—For cases in point, see vol. 13, Cent. Dig. Courts, § 801.

Supplementary and ancillary proceedings in federal courts, see note to Toledo, St. L. & K. C. R. Co. v. Trust Co., 36 C. C. A. 195.]

2. APPEAL—ASSIGNMENTS OF ERROR.

A decree entered by a circuit court after a hearing before the court, without any finding of facts, will not be reviewed by the Circuit Court of Appeals upon a general assignment of error which merely avers that the decree is "contrary to the law and the evidence adduced in the cause."

[Ed. Note.—For cases in point, see vol. 3, Cent. Dig. Appeal and Error, §§ 2997, 2998.]

Appeal from the Circuit Court of the United States for the Northern District of West Virginia, at Parkersburg.

McCluer & McCluer, for appellant.

George W. Johnson (John H. Holt and Jake Fisher, on briefs), for appellees.

Before PRITCHARD, Circuit Judge, and PURNELL and KELLER, District Judges.

PURNELL, District Judge. In 1859 the state of Virginia granted to Thomas Mathews, Mason Mathews, and John Brown 2,100 acres of land in what is now West Virginia. John Brown conveyed to Thomas Mathews and Mason Mathews his undivided interest in two-thirds of this. Thomas Mathews and Mason Mathews conveyed to Betsy Brown. Thomas Mathews and Mason Mathews became the owners of 1,400 acres of this tract, and Betsy Brown 700 acres. Six hundred and fifty acres of this was assessed in 1873 as belonging to Betsy Brown, and 1,400 acres were assessed as the property of Thomas Mathews, Mason Mathews, and John Brown. All of these lands were returned delinquent for nonpayment of taxes to the sheriff of Nicholas county to be sold. The sheriff sold them, and they were

purchased by the state. The lands were then left off of the assessor's books, with a note that the same had been purchased by the state, and to certify the lands to the commissioner of school lands. The assessor continued them on the landbooks, and they were returned again for nonpayment of taxes in 1873 and 1874, and were sold by the sheriff in October, 1875, and again purchased by the state. The assessor or commissioner of revenue continued them on the books for the years 1875 and 1876, and they were again sold in 1877, and again purchased by the state. They were still continued on the books for 1877 and 1878, and were sold again in 1879, and purchased by the state, as also in 1881. James F. Hamilton claimed to have purchased 800 acres of the 2,100 acres, and received his deed from the clerk of the county court of Nicholas county on the 24th of August, 1884. But it is claimed by the original plaintiffs in this suit that this deed shows a sale of a 610-acre tract of this land in the name of Betsy Brown as delinquent for 1879 and 1880, and that this deed was null and void, that it should have been returned by the commissioner of school lands, and, if it had, it would have been sold as school lands.

It is alleged that all of the original parties were tenants in common in the 2,100 acres of land. It had never been partitioned, and the 650 acres, if delinquent, was returned improperly, or in the wrong name, and the deed shows 800 acres instead of 650 acres. The plaintiff charged irregularity on the part of the sheriff in returning the land delinquent. He charges that the sale in the name of Mathews and Brown is irregular and therefore void and conveyed no title; that the purchase by the state was void, because it was not properly certified by the clerk of the court of Nicholas county; that upon petition for the sale of these lands the petition was referred to James S. Craig, commissioner in chancery, and required him to report the matters and things contained in the order of reference; that he was the same James S. Craig who was commissioner of school lands; that he filed his report, which was to the prejudice of complainant and in violation of law; that on the 15th of August, 1887, the court decreed that the land should be sold; that James S. Craig, commissioner of school lands, on the 16th of September, 1887, sold the same to C. P. Dorr for $1,085; $395 was cash, and the sale was confirmed on the 23d of November, 1887, to C. P. Dorr. The plaintiff claimed further that this was an illegal sale, and H. M. Mathews gave a deed of trust for moneys due to Alexander Mathews, his brother, who afterwards died, and the sale was made under this trust, and Alexander Mathews became the purchaser. The original plaintiff further claimed that on the 3d of January, 1892, he purchased of Mason Mathews and Thomas Mathews their interest in this tract of land and the interest of the heirs of Mason Mathews, and received a deed for it. He claims that no legal sale was made for the land for delinquent taxes, and no legal sale was ever made by the commissioner of school lands, either as delinquent or forfeited, and he was entitled to his deed. They alleged that Dorr had not paid the commissioner of school lands the notes given by him for the deferred payments; nor had the commissioner given Dorr a deed for the land; and asked that Craig be en-

joined as commissioner from making a deed to Dorr, and Dorr be enjoined from taking possession of the land, and the cloud on the title be removed.

The defendant Craig filed his answer to this original bill, admitting the material allegations together with his exhibits, the notes given for the deferred payments, but claiming the sale made by him was in all respects regular and legal. The plaintiffs then filed an amended bill. This bill was filed on August 6, 1894. The fifth paragraph, as an amendment to his original bill, reads as follows:

"That by way of further amendment to his bill of complaint your orator is ready and willing and now here offers to pay such defendant as may be justly entitled to receive the same whatever purchase money he has legally paid to Commissioner Craig on account of the purchase of your orator's land, or to any sheriff on account of subsequent taxes properly assessed and charged thereon, if any such taxes have been paid, which upon information your orator denies, with interest on said moneys from the time they were so paid."

On the 8th of January, 1896, Dorr and Hutton filed their joint and amended answer to the complainant's bill. The exceptions to the original answer were then withdrawn, and the joint amended answer was replied to generally. On the 31st of January, 1896, Dorr and Hutton filed their cross-bill. On the 26th of January, 1898, C. P. Dorr, Elihu Hutton, and King, the complainant, prepared an agreed order or decree, by which King was given all of the relief asked for in his bill, and by agreement of the complainant and these two defendants, Dorr and Hutton, the decree of court provided this cause was retained to settle the differences between the defendants Dorr and Hutton on the one side and James S. Craig on the other. The decree was a decree adjudicating the rights of the plaintiff, and gave to the plaintiff all the relief asked, and settled all of the controversies between the complainant and defendants Dorr and Hutton. After all of the parties had been eliminated from these original suits, and all the relief asked in the original and amended bill of King had been by the court granted, under the agreement between the plaintiff King and the defendants Dorr and Hutton, then the only parties remaining from the original suit were the defendants C. P. Dorr and Elihu Hutton, on the one side, and the defendant James S. Craig on the other. In January, 1902, James S. Craig appeared specially for the purpose of objecting to taking the deposition, taking the ground that no process had ever issued upon said cross-bill, or was ever served upon him, which was set forth in an affidavit. Attention being thus called to the apparent failure to serve the subpœna, process was issued and served. In April, 1902, the defendant James S. Craig demurred to the cross-bill of Dorr and Hutton, which demurrer was set down for hearing, heard, and overruled. Craig afterwards filed a plea in abatement to the cross-bill, which was upon a hearing stricken out, and Craig answered. Evidence was taken both by Dorr and Hutton and the defendant James S. Craig, and on the 20th of January, 1905, a final decree in favor of Dorr and Hutton for $756.28 and costs was entered by the court.

The question presented is therefore one of jurisdiction, arising exclusively on the cross-bill of two defendants under the original bill against a codefendant, to recover money paid said codefendant for land improperly sold by him in an official and fiduciary capacity, which sale was attacked and set aside, arising out of and connected with the subject-matter of the original bill. The purpose of the cross-bill was to cancel the purchase money notes given Craig by Dorr for the land so purchased, and to recover the money paid him. No question is raised as to the jurisdiction of the original suit, but the right of the court to retain jurisdiction of the cross-bill after the decree settling all matters in controversy between complainant King and Dorr and Hutton, Dorr and Hutton and Craig being all residents of the state of West Virginia, is the question discussed and insisted on at the hearing.

. The first position taken by appellant, that the final decree drawn, entered by consent of the complainant and the parties to the filing the cross-bill, ended the litigation, and .carried with it the cross-bill, is untenable. The questions raised or the subject-matter of the cross-bill was expressly retained by the court, which had acquired jurisdiction of the parties and the subject-matter of the bill. Appellant was a proper party to the original bill, had filed an answer, not traversing the .allegations of the bill, but admitting the sale, the payment of the cash, and the execution of the notes for the purchase money, but claims said sale was in all respects regular and legal. The relief asked in the cross-bill grew directly out of the matters complained of, the wrongful sale of the land of complainant, and the collection of the proceeds of such sale, the repayment of which appellant is still resisting. "When the cross-bill alleges additional facts not alleged in the original bill, but which are directly connected with the subject-matter of the original suit, prays affirmative relief directly connected with and .arising out of the matters of the original suit and the additional facts alleged, the dismissal of the original bill does not carry with it the cross-bill, and the court may order the cause to be retained for a final hearing and decree upon the cross-bill." Bates Federal Procedure, § 386, and authorities cited. Cross-bills are necessary when certain defendants seek affirmative relief against their codefendant. Veach v. Rice, 131 U. S. 293, 9 Sup. Ct. 730, 33 L. Ed. 163; Overby v. Gordon, 177 U. S. 220, 20 Sup. Ct. 603, 44 L. Ed. 741; Comstock v. Herron, 55 Fed. 812, 5 C. C. A. 266.

The original case at bar was not dismissed, but the relief asked granted, and until this was done the relators in the cross-bill were not entitled to the relief demanded therein. Finding they could not sustain the title to the land acquired by their purchase and deeds from the appellant because of irregularities and other causes, they consented to a decree setting aside such sale and deeds, when, appellant not objecting to such consent decree, and not until then, were they entitled to have the purchase money refunded and the notes surrendered for cancellation. The land was bought in good faith, the cash paid, and the notes for deferred payment executed. If possible, Dorr and Hutton were desirous of retaining the land, defending the title there-

of; but, being advised they could not successfully do so, made a virtue of necessity, and consented to the decree granting the relief demanded in the bill, and asked that their money, for which they had received nothing, be refunded to them by Craig, who does not deny having received it as alleged.

The second position is that the diverse citizenship having been eliminated by the consent decree, Dorr and Craig both being citizens of West Virginia, the United States Circuit Court had no jurisdiction; the court has been devested of jurisdiction of the cross-bill. The same question was raised in Morgan Co. v. Texas Central R. R. Co., 137 U. S. 200, 11 Sup. Ct. 61, 34 L. Ed. 625, and decided adversely to appellant's contention, in 5th Syl. and opinion of the Chief Justice. Jurisdiction of a cross-bill is not dependent on diverse citizenship, and, having once acquired jurisdiction, a court of equity will administer the estate, do complete equity between the parties. A cross-bill is ancillary to the original bill. Morgan v. R. R., ut supra; In re Tyler, 149 U. S. 181, 13 Sup. Ct. 785, 37 L. Ed. 689; Rouse v. Letcher, 156 U. S. 49, 15 Sup. Ct. 266, 39 L. Ed. 341; Carey v. Houston & Texas Ry., 161 U. S. 133, 16 Sup. Ct. 537, 40 L. Ed. 638.

Appellant in his argument seeks to treat the cross-bill as an original bill, ignoring all the authorities on the subject. He contends there was no proper service of the subpœna. We are of a different opinion, but, admitting for the sake of the argument the service was defective, Craig appeared, filed a general demurrer, a plea in abatement, and an answer, and took depositions on a general appearance, without any notice or note that he was appearing under protest, and entering a special appearance for a special purpose. This would amount to a waiver of any irregularity in such service. This about answers all the questions raised in 12 exceptions found in the record, all of which are to the cross-bill, service of subpœna thereunder.

The only other exception is thus stated:

"Thirteenth. The court erred in rendering its decree of January 20, 1905, because the same is contrary to the law and the evidence adduced in the cause."

There was no reference to a master to find the facts, and the court does not state any facts as found, except that on the final hearing of all the matters arising on the cross-bill, demurrers, answers, and depositions there was due from Craig to Dorr, to whom had been assigned the claim of Hutton, the sum of $726.28, with interest thereon from the 28th day of January, 1905, and for costs. The record in this appeal is unsatisfactory, and the thirteenth assignment of error, as above cited, ignores the rules of this court as to exceptions. It does not "set out separately and particularly each error asserted and intended to be urged." It leaves the field open for what was done. Counsel under this exception go into an extended discussion of facts, which involves an examination of the entire record in the cause from the issuing of the original subpœna to the entering of the final decree, and finding the facts, including passing on the credibility of witnesses. This this court will not undertake to do. The following is the decree in which the exception points out no error:

Final Decree.

Thomas M. King v. C. P. Dorr et al. In Equity.

and

Thomas M. King v. Betsy Brown et al. In Equity.

These causes having heretofore been consolidated came on to be finally heard on the cross-bill, rule, and proceedings of C. P. Dorr, on papers heretofore read. former orders, and decrees, the answer of James S. Craig, the depositions of witnesses taken on behalf of the said Dorr on the 16th day of May, 1902, and on behalf of the said Craig on May 18, 1903, and thereafter, filed July 11, 1903, and argument of counsel. On consideration whereof, the court is of opinion that the said Dorr is entitled to recover, from the said Craig, as, defendant, the sum of $726.28, with interest thereon until paid. It is therefore considered by the court that the said C. P. Dorr do recover from said defendant James S. Craig the sum of $726.28, with interest thereon from January 28, 1902, until paid, together with his costs about his prosecution in this behalf expended, to be taxed by the clerk of this court. It is further adjudged, ordered, and decreed by the court that the said sum of money so decreed to be paid by 'the said James S. Craig be paid into the registry of this court, to be distributed by said registrar.

After a careful examination of the record, the facts being as herein stated, we find no error in the decree, and the same is therefore affirmed.