## YOUNGBLOOD et al. v. MAGNOLIA PETROLEUM CO. et al.

Circuit Court of Appeals, Tenth Circuit. Oct. 16, 1929.

No. 7.

J. H. Jarman, of Oklahoma City, Okl. (J. B. Allen and B. C. Logsdon, both of Oklahoma City, Okl., on the brief), for appellants.

Alvin Richards and F. A. Calvert, both of Tulsa, Okl. (B. B. Blakeney, Hubert Ambrister, and W. R. Wallace, all of Oklahoma City, Okl., John E. Curran and R. B. F. Hummer, both of Tulsa, Okl., J. E. Lester, M. H. Mills, and T. H. Lester, all of Seminole, Okl., W. T. Anglin and Alfred Stevenson, both of Holdenville, Okl., and Benjamin C. Conner and Hunter L. Johnson, both of Tulsa, Okl., on the brief), for appellees.

Before LEWIS, COTTERAL, and McDERMOTT, Circuit Judges.

McDERMOTT, Circuit Judge. In October, 1926, oil was struck on the 120 acres of land involved in this litigation. The oil companies owning the leases had expended, at the time of the trial in January, 1928, approximately $2,200,000 in developing and operating the property. Large sums had been paid for interests in the leases and for royalty rights. Fie Lewis is a Seminole freedman citizen, and this land was originally allotted to her. She sold the surplus 80 acres of this land on February 4, 1905, to one O. D. Strother, for a fair and adequate consideration. In 1908, she sold her homestead 40 acres to Mr. Strother for a similar consideration. The possession and enjoyment of Strother, and those in privity with him, were exclusive and undisputed until March 7, 1927 (which was after the discovery of oil), on which date there was filed for record a contract between R. R. Youngblood and Ben July, guardians of Fie Lewis, and J. B. Allen and J. H. Jarman, attorneys, by the terms of which said attorneys were employed to recover the land in controversy for a stipulated fee of 50 per cent. of the amount of the recovery. The filing of this contract was alleged to have clouded the title of the Magnolia Petroleum Company and the Pure Oil Company, and this action to quiet title resulted. The defendants were the guardians and attorneys for Fie Lewis, and others claiming title through Strother, and Strother's executor. It is stipulated that on March 7, 1927, Fie Lewis was adjudicated an incompetent by the county court of Seminole county, and Youngblood and July were duly appointed as joint guardians.

The appellees claimed in the court below (a) that Fie Lewis was legally competent at the time she conveyed the land to O. D. Strother; (b) that certain judgments for the defendants rendered in 1912 in an action by the United States against O. D. Strother and others are an adjudication of the title of the appellees; (c) title by prescription; (d) any claim of Fie Lewis is barred by laches and the statute of limitations; (e) that they are innocent purchasers for value. To which claims the appellants (a) join issue as to the matter of mental competency; (b) assert that the actions which resulted in the 1912 judgments did not and could not embrace the matters now in issue; (c) that, because of her mental incompetency, the claims of prescriptive right and of laches are not valid; (d) that while they assert that Fie Lewis was entirely without understanding, and her conveyances therefore void, yet, if that issue be found against them, that she is at least a person of unsound mind, and her conveyances are subject to rescission, without prejudice to the rights of third persons, in which latter event appellants offer to protect the rights of innocent purchasers.

The trial court heard the evidence at length, much of which was contradictory. He found generally against the claim of Fie

Lewis, and in favor of all those who deraigned their title through O. D. Strother. This appeal is from that decree.

It is immediately apparent that, if the trial court's finding of fact as to the competency of Fie Lewis is correct, the decree appealed from is correct, and there is no need of exploring the other questions presented. ██ We have read the entire record in the case. It would serve no useful purpose to review it. Fie Lewis was in the courtroom and took the witness stand. While many parts of her testimony are unintelligible, many parts of it disclose at least ordinary intelligence. When she took the witness stand at the trial she was 85 years old; her testimony was given without an interpreter, and the barrier of a strange tongue must be remembered in considering it. Yet she volunteered the statement that her son filed on this particular land for her, and that he told her all about it. She knew her children and their relative ages. She knew that one of her children died before she got an allotment. She remembered the names of people who took her to the Chickasaw Nation during the Civil War. She knew that she and her children had sold all of their land, one of her boys having sold it after he came back from the World War. She remembered that her son Lester was not of age, and that she had to file for him. She remembered where she was born; she said that, if she had a big bill she wanted to change, she gave it to the children and they changed it for her. She said her son Peter would cash checks. She talks three languages, and said that a man by the name of Concharty asked her to interpret for him, but she declined. In her testimony she uses the word "interpret," "penetrate," "guardian," and other words. She insisted on her son Ben being selected as one of her guardians; she consulted with her sons and her husband about important business matters.

There was other evidence strongly tending to show that she was entirely competent when she made these deeds, not the least of which is the undisputed fact that she drove close and shrewd bargains for the sale of this land, and realized more than the average price for similar land. There was evidence to the contrary, but it does not impress us. The trial court has had unusual experience with Indians, and long experience in dealing with oral evidence, and of observing the effect of large sums of money upon the memory of things long past. Even in an equity case, the judgment of an appellate court, confronted with the record, should not lightly displace the judgment of the trial court, who has had the advantage of observing the witnesses upon the stand.

"This is a case in equity, and while in such a case questions of fact are always open to consideration by an appellate court, great respect is paid to the conclusions of the trial court in respect to them." United States v. Detroit Lumber Co., 200 U. S. 321, 26 S. Ct. 282, 284, 50 L. Ed. 499.

"It is the rule of this circuit that 'when a court of equity has considered conflicting evidence, and made a finding and decree, it is presumptively correct, and, unless some obvious error of law has intervened or some serious mistake of fact has been made, the finding or decree must be permitted to stand.' State of Iowa v. Carr [C. C. A.] 191 F. 257; Harper v. Taylor [C. C. A.] 193 F. 944; Silver King Coalition Mines Co. v. Silver King C. M. Co. [C. C. A.] 204 F. 166, Ann. Cas. 1918B, 571." Quinn v. Union Nat. Bank, 32 F.(2d) 762, 763 (8 C. C. A.).

However, a reading of this record has brought us to the conclusion that Fie Lewis was competent when she made the deeds in question.

Counsel undertake to avoid the effect of this conclusion by asserting that the record shows that the trial court disclosed, by his questions during the progress of the trial, that he was laboring under a misapprehension of the law. The questions of the trial court disclosed nothing but an effort to get at the facts. Furthermore, the record shows that the trial of the case was concluded on January 31, 1928, and was thereafter briefed by both sides; the trial court considered these briefs until the 18th day of the following October, when he decided the case. There is nothing in the record to support the conclusion that, when he decided the case, he was laboring under any misapprehension of the law.

Neither do we see any occasion for any discussion of the various rules as to the test of mental competency. Under any rule cited, there is ample evidence to support the finding of the trial court. It is the theory of appellants that Fie Lewis was totally without understanding, or at least an imbecile, from 1905 until the present date. No explanation is offered as to why it took 22 years to discover her mental condition; the explanation may probably be found in the discovery of the oil.

The decree of the trial court is right, and should be and is affirmed.