## RAINES v. LIGON et al.

Circuit Court of Appeals, Tenth Circuit.
January 15, 1930.

No. 109.

Wellington L. Merwine, of Okmulgee, Okl., for appellant.

V. R. Biggers, of Wewoka, Okl. (Biggers, Wilson & Aldridge, Pryor & Stokes, and A. M. Fowler, all of Wewoka, Okl., on the brief), for appellees Ligon, Mainard, Garner, Brixey, and Casey.

C. Dale Wolfe and W. M. Haulsee, both of Wewoka, Okl., for appellee Mathis.

Before LEWIS, PHILLIPS and McDERMOTT, Circuit Judges.

PHILLIPS, Circuit Judge. This is a suit in equity brought by Maceo Raines to cancel: (1) A warranty deed running from plaintiff and N. H. Raines, her husband, to J. A. Ligon, conveying 120 acres of land in Seminole county, Oklahoma; (2) certain conveyances of undivided fractional interests in the oil, gas and mineral rights therein, from Ligon to W. E. Casey, J. D. Garner, Mabel Garner, Herman Shepard and J. L. Mainard; and (3) certain conveyances of undivided fractional interests in the oil, gas and mineral rights therein from Shepard to J. F. Remy and O. Brixey.

The complaint alleged that the plaintiff is a resident of Springfield, Tennessee; that she had employed one J. A. Burrows, of Lima, Oklahoma, as her agent, to sell such tract of land; that, on March 5, 1926, an oil well was being drilled in the vicinity of such land; that such well was then producing some oil and gas and was giving indications that it would come in as a commercial well; that plaintiff had no knowledge of the oil and gas development in the vicinity of such land; that, on March 5, 1926, the above named grantees, with the knowledge that Burrows was plaintiff's agent, induced Burrows to go to Springfield and negotiate with plaintiff for the conveyance of such land to them for $10,-500; that such amount was a grossly inadequate consideration; that such grantees, in order to induce Burrows to violate his trust, agreed to pay him a large sum of money, as commission for his services, and to pay his traveling expenses from his home in Oklahoma to Springfield and return; that, pursuant to such agreement with such grantees, Burrows went to Springfield, advised plaintiff to sell such land for $10,500, induced her to execute and deliver a deed for such land to J. A. Ligon and concealed from her the fact of the drilling of such well and of the increased value of such land on account thereof.

The complaint further alleged such conveyances of the oil, gas and other mineral rights in such land and that such grantees took such conveyances with the knowledge that Ligon had procured such deed to the land by fraud and deceit.

The complaint tendered a restoration of the amount paid for such land and prayed for cancellation of such deeds and conveyances.

Ligon filed an answer denying specifically the allegations of fraud and alleged that Burrows, as agent for the plaintiff, approached him on March 5, 1926, and offered to sell such land to him; that he agreed to buy the land for $15,000; that Burrows thereupon went to the home of plaintiff and procured the deed; that such deed, with sight draft for $10,500 attached, was forwarded to the Farmers' National Bank at Wewoka, Oklahoma; that plaintiff appeared in person at the bank, on the day the draft was presented to Ligon, and directed the bank not to deliver the deed until further notice from her; that plaintiff then entered into negotiations with Ligon for the sale of the land; that such negotiations con-

tinued for about fifteen days; that during such period plaintiff was in the immediate vicinity of the land and knew of the oil development near the land; that, as a result of such negotiations, plaintiff sold the land to Ligon for $15,000; that such sum was the reasonable market value of the land.

Each of the other grantees filed separate answers denying the allegations of fraud and alleging that they were bona fide purchasers for a valuable consideration, without notice of such alleged fraud.

The evidence showed the following facts: Plaintiff was a Negro woman, twenty-five years of age. She resided with her husband, N. H. Raines, a negro physician, in Springfield, Tennessee. Plaintiff employed Burrows, a negro school teacher, who lived in the immediate vicinity of the land, to act as her agent in the sale of the land and authorized him to sell the land for $10,000 cash or $12,000—one-third cash and the balance in deferred payments. Burrows was to receive, as his commission, any amount he could sell the land for in excess of the prices above stated. On March 6, 1926, Burrows approached J. L. Mainard, who was acting for himself, Ligon, M. F. Mainard and E. C. Aldridge, and agreed to sell the land to them for $14,000. A deed, reciting a consideration of $10,500, running to Ligon, as grantee, was prepared and delivered to Burrows. J. L. Mainard instructed Burrows to proceed to plaintiff's home and consummate the transaction at once before some one telegraphed a fabulous offer to plaintiff. Burrows immediately left Wewoka for Springfield and arrived there on March 8, 1926. He remained there one day discussing the trade with plaintiff and her husband. He represented to them that the oil prospects were not promising; that it might be five or six years before there would be any oil development, and that the oil and gas rights were worth only from $25 to $40 per acre, since there was no oil well being drilled near plaintiff's land. Burrows left Springfield the evening of March 8, 1926, and returned to Wewoka. On March 11, 1926, plaintiff and her husband executed the deed and forwarded it, with a sight draft for $10,500 attached, through a Springfield bank to the Farmers' National Bank, together with instructions to deliver the deed upon payment of the draft. While Burrows was in Springfield, Chas. B. Williams approached J. L. Mainard and said that he had a better offer for the land; that he would wire Burrows to cancel the trade unless Mainard would raise the price $1,000. Mainard assented to this demand and agreed to pay $15,000 for the land. On March 11th, 1926, Burrows and Williams entered into a written contract with Ligon. This contract provided that Williams and Burrows should procure a warranty deed for the land from plaintiff and her husband to Ligon and cause it to be delivered, with sight draft attached for $10,500, to the Farmers' National Bank; that Ligon should deposit $4,500 in the Security Bank of Wewoka; that the Security Bank should pay to Williams and Burrows the sum of $4,500 upon approval of the title to the land. On March 13, 1926, the plaintiff, having received information from Burrows that some question was being raised about the title to the land, left immediately for Lima, Oklahoma, where her uncle, G. V. Gross, lived, for the purpose of clearing the title to such land. Plaintiff arrived at Lima about March 15, 1926. She agreed with J. L. Mainard, who represented Ligon, M. F. Mainard and Aldridge, to have the Springfield bank reduce the draft from $10,500 to $9,000 and that the sum of $1,500 should be used in remedying the defects in the title to the land. J. L. Mainard and his associates paid the draft, after its reduction to $9,000. After some attempts to clear the title to the land, a further contract was entered into on March 25, 1926, by which it was agreed that Burrows and Williams should receive $3,500 instead of $4,500; that plaintiff should refund $2,000 of the consideration received by her; that plaintiff should be released from the warranty contained in her deed; and that Burrows and Williams should be released from any claims against them under the contract of March 11. This contract was carried out. The terms of this contract were proposed by Burrows, Williams and plaintiff and the contract was prepared by their lawyer. Plaintiff then returned to Springfield.

Apparently the alleged defects in the title were substantial, because, at the time of the trial of this cause, three lawsuits were pending against Ligon and the other purchasers, by persons who claimed to own interests in the land.

In the latter part of February and the early part of March, 1926, an oil and gas well was being drilled approximately a mile and a quarter north of the tract of land in question. The producing sand was reached at a depth of 3,982 feet, about February 28, 1926, and the well on that date produced at the rate of 95 barrels of oil per day. It was drilled further into the sand and, on March 6th, at a depth of 4,009 feet the well produced at the rate of 489 barrels of oil per day. The well was completed on March 12th at a depth of 4,012 feet and produced at the rate of 995 barrels of oil per day.

During the time that plaintiff was in Oklahoma, she was in the vicinity of the land in question and this oil well, and the defendants in no wise concealed from her the drilling of such well and the increased value of the land on account thereof.

The trial court found the issues in favor of the defendants below and entered its decree denying plaintiff any relief. Plaintiff has appealed.

Fraud must be established by clear, satisfactory and convincing evidence. Lalone v. United States, 164 U. S. 255, 257, 17 S. Ct. 74, 41 L. Ed. 425; In re Locust Bldg. Co. (C. C. A. 2) 299 F. 756, 765, 766; United States v. Bucher (C. C. A. 8) 15 F.(2d) 783, 785; United States v. Hays (C. C. A. 10) 35 F. (2d) 948.

[2] When a court of equity has considered conflicting evidence and has made its findings and decree thereon, such findings and decree are presumptively correct and will not be disturbed, in the absence of a serious mistake in the consideration of the evidence or an obvious error in the application of the law thereto. Fienup v. Kleinman (C. C. A.) 5 F.(2d) 137, 141; State of Iowa v. Carr (C. C. A. 8) 191 F. 257, 263; New York L. I. Co. v. Griffith, Adm'r (C. C. A. 10) 35 F.(2d) 945; Youngblood v. Magnolia Petroleum Co. (C. C. A. 10) 35 F.(2d) 578, 579.

The evidence tended to establish that the agent, Burrows, was unfaithful to his trust, but it failed to establish, with the degree of certainty required, that the purchasers of such land and mineral rights either participated in or had knowledge of any such fraud.

It does not appear that the trial court made any serious mistake in the consideration of the evidence or any obvious error in the application of the law to the facts.

The decree is affirmed at plaintiff's costs.