## BARNETT v. MAYES et al.
### No. 232.

Circuit Court of Appeals, Tenth Circuit.
Aug. 6, 1930.

Rehearing Denied Sept. 8, 1930.

LEWIS, Circuit Judge, dissenting in part.

Cornelius Hardy, of Wewoka, Okl. (C. M. Threadgill, of Wewoka, Okl., T. M. Baughman, of Sulphur, Okl., and John T. Cooper

and A. C. Kidd, both of Wewoka, Okl., on the brief), for appellant.

V. R. Biggers, of Wewoka, Okl. (J. E. Thrift, and C. J. Davenport, both of Sapulpa, Okl., R. W. Kellough, of Tulsa, Okl., Chas. G. Dailey, of Bluffton, Ind., and Irwin L. Wilson, J. Bart Aldridge, and Lynn Adams, all of Wewoka, Okl., on the brief), for appellees.

Before LEWIS, COTTERAL, and McDERMOTT, Circuit Judges.

McDERMOTT, Circuit Judge (after stating the facts as above).

I. The appellant assigns as error the trial court's finding that the Mayes deed was not a forgery; his finding that Barnett was not an heir of Leathy Sango; and his finding that Barnett's claim was barred by laches. No useful purpose will be served by a review of the evidence. As to the forgery, the testimony adduced by Barnett, without more, is unconvincing. One of his witnesses testified that "he and Cud agreed to divide whatever was recovered in the lawsuit; that he was to furnish Cud with the witnesses." This same witness, in another lawsuit, took the position that the deed was not a forgery, but that "Leathy Sango did not know what she was doing." The notary public who acknowledged the deed claimed her certificate was false, but discredited her testimony seriously by admitting that after the lawsuit was brought she wrote to a witness to the deed, "not to say anything about the case until she could see her." Many other circumstances tend strongly to discredit the integrity of Barnett's case. On the other hand, the evidence that the deed was genuine is convincing.

Concluding that the deed is genuine, the question of whether Barnett was an heir of Leathy Sango is immaterial. However, the testimony of his witnesses developed a sordid story of Barnett living with two women at the same time; of a lawful marriage to the one who was not the mother of Leathy. The record fully supports the trial court's finding of fact in this regard, as it also does on the question of laches. In any event, the trial court heard the witnesses, and great respect must be paid to his findings of fact. United States v. Peterson (10 C. C. A.) 34 F.(2d) 245; Youngblood v. Magnolia Petroleum Co. (10 C. C. A.) 35 F.(2d) 578; New York Life Ins. Co. v. Griffith (10 C. C. A.) 35 F.(2d) 945; Raines v. Ligon (10 C. C. A.) 37 F.(2d) 633. The decision of the trial court on the merits, was right.

II. Appellant contends that the trial court was without jurisdiction to enter the decree. If that is correct, the decree must be reversed, for jurisdiction of a United States court can never be conferred by consent, nor can jurisdiction ever be waived. Gainesville v. Brown-Crummer Co., 277 U. S. 54, 48 S. Ct. 454, 72 L. Ed. 781; Mansfield C. & L. M. Railway Co. v. Swan, 111 U. S. 379, 4 S. Ct. 510, 28 L. Ed. 462; St. Louis Smelting & Refg. Co. v. Nix (8 C. C. A.) 272 F. 977; Olds Wagon Works v. Benedict (8 C. C. A.) 67 F. 1. Several grounds are set up, one of them being that Barnett's tendered cause of action was legal, and could not be interposed in an equitable action. Such ground, if sound, is not jurisdictional, and was waived by Barnett's prayer for affirmative relief. Mathis v. Ligon (10 C. C. A.) 37 F.(2d) 635, 636. But it is not sound. Barnett asked for the cancellation of various deeds and for an accounting, which invoke equitable powers; furthermore, the proceeding was ancillary. The principal point urged as to lack of jurisdiction is, however, the fact that there was no diversity of citizenship between himself and Mayes, one of the parties against whom he sought relief; and that, except as to the leasehold interest in the 40 acres, the court had no possession of the property prior to the filing of Barnett's answer. We will take up first the question of jurisdiction as to the 40 acre leasehold; later, the jurisdiction as to the fee title to the 40 acres and the 80 acres, which for convenience, we will refer to as the "80 acres."

III. The 40 acre leasehold was in the possession of the United States court; the court was charged with the duty of administering it for the benefit of all creditors. While it was in the possession of the court, no other court had jurisdiction of any kind over it. In Kline v. Burke Constr. Co., 260 U. S. 226, 229, 43 S. Ct. 79, 81, 67 L. Ed. 226, 24 A. L. R. 1077, the court held: "It is settled that where a federal court has first acquired jurisdiction of the subject-matter of a cause, it may enjoin the parties from proceeding in a state court of concurrent jurisdiction where the effect of the action would be to defeat or impair the jurisdiction of the federal court." The court quoted with approval from Covell v. Heyman, 111 U. S. 176, 182, 4 S. Ct. 355, 28 L. Ed. 390, as follows:

"They exercise jurisdiction, it is true, within the same territory, but not in the same plane; and when one takes into its ju-

risdiction a specific thing, that res is as much withdrawn from the judicial power of the other, as if it had been carried physically into a different territorial sovereignty. To attempt to seize it by a foreign process is futile and void. The regulation of process, and the decision of questions relating to it, are part of the jurisdiction of the court from which it issues."

The power of a court, state or federal, to stay actions in other courts which propose to disturb the possession or title of property in the possession of the first court, is well recognized. The propriety and legality of the order here made, restraining Barnett from proceeding in the state court, cannot be questioned.

Counsel contend, however, that ejectment is an action in personam, and hence not within the rule. The object of the action in ejectment is the possession of the res; if successful, the state court would have been required to issue its writ putting Barnett in possession of the 40 acre leasehold; the sheriff would have found the receiver in possession, and immediately there is that clash of jurisdictions at which the rule of law is expressly aimed. Chief Justice Fuller, sitting on Circuit, passed upon the precise question, and held that an action in ejectment in the state court excluded the federal court from jurisdiction over a suit involving the title to the same property. He said:

"The institution of the action in the state court looking to the taking of possession of the specific property in litigation was in effect the assertion of the right of control over that property. The action in the state court required the control and dominion of the property involved, or it was ineffective for all purposes." Westfeldt v. North Carolina Mining Co. (C. C. A.) 166 F. 706, 711.

The restraining order was properly issued. The further proceedings were initiated by Barnett. Pending the receivership, the doors to other courts were closed to him for any action to oust the receiver and possess himself of the property he claimed. The property was oil property of fluctuating value, and delay of justice might well mean a denial. So he came into the only court open for that purpose, and asked for his property. He alleged a claim against Mayes, a resident of Oklahoma, but he likewise alleged a "prior and superior right adverse to the lien of the complainant," a non-resident.

The court had jurisdiction, pending the receivership, as to all claims involving the title to the property in the possession of the receiver. In Farmers' Loan, etc., Co. v. Lake St. Rd. Co., 177 U. S. 51, 61, 20 S. Ct. 564, 568, 44 L. Ed. 667, the court, speaking through Mr. Justice Shiras, said:

"The possession of the res vests the court which has first acquired jurisdiction with the power to hear and determine all controversies relating thereto, and for the time being disables other courts of co-ordinate jurisdiction from exercising a like power. This rule is essential to the orderly administration of justice, and to prevent unseemly conflicts between courts whose jurisdiction embraces the same subjects and persons."

In Wabash Railway v. Adelbert College, 208 U. S. 38, 54, 28 S. Ct. 182, 187, 52 L. Ed. 379, the court said:

"When a court of competent jurisdiction has, by appropriate proceedings, taken property into its possession through its officers, the property is thereby withdrawn from the jurisdiction of all other courts. The latter courts, though of concurrent jurisdiction, are without power to render any judgment which invades or disturbs the possession of the property while it is in the custody of the court which has seized it. For the purpose of avoiding injustice which otherwise might result, a court during the continuance of its possession has, as incident thereto and as ancillary to the suit in which the possession was acquired, jurisdiction to hear and determine all questions respecting the title, the possession, or the control of the property. In the courts of the United States this incidental and ancillary jurisdiction exists, although in the subordinate suit there is no jurisdiction arising out of diversity of citizenship or the nature of the controversy."

The power to determine title to property in the possession of a receiver has been recently exercised by the Supreme Court of the United States in Oklahoma v. Texas, 258 U. S. 574, 42 S. Ct. 406, 66 L. Ed. 771; in that case, the original jurisdiction of the Supreme Court was invoked by a boundary line controversy between states. A receiver was appointed. Private individuals intervened for the purpose of adjudicating individual title to tracts in the disputed territory. The Supreme Court, in the exercise of original jurisdiction, determined these controversies between individuals over the ownership of land. The court, at page 581 of 258 U. S., 42 S. Ct. 406, 409, 66 L. Ed. 771, said:

"The other claims, being for particular tracts and funds in the receiver's possession

and exclusively under our control, are brought before us because no other court lawfully can interfere with or disturb that possession or control. It long has been settled that claims to property or funds of which a court has taken possession and control through a receiver or like officer may be dealt with as ancillary to the suit wherein the possession is taken and the control exercised—and this although independent suits to enforce the claims could not be entertained in that court."

In Chillicothe Furniture Co. v. Revelle (8 C. C. A.) 14 F.(2d) 501, 504, a receiver was in possession of a note and mortgage, alleged to be the property of the defendant; an action was brought in a state court, seeking to cancel the note and mortgage; that is, the title of the receiver was attacked, as in this case. That court, in an opinion by Judge Walter H. Sanborn, held the action should be enjoined. He said:

"If any or every claimant of the invalidity of or of an adverse title to or interest in any note, mortgage, real estate, or other property of a defendant corporation in a suit brought to administer and distribute the proceeds of that property to its creditors could successfully invoke and use the jurisdiction of some other court than that in which the suit for administration and distribution was first brought, the result would be delay, confusion, and ultimately, the necessary abandonment of such suits for the administration and distribution of the property of insolvent debtors."

In Oppenheimer v. San Antonio Land & Irrigation Co. (5 C. C. A.) 246 F. 934, it was held that a court had power to restrain a state court action in which a paramount claim was asserted to the property.

The test of whether a suit is ancillary is whether it has "direct relation to property or assets actually or constructively drawn into the court's possession or control by the principal suit." Fulton Bank v. Hozier, 267 U. S. 276, 280, 45 S. Ct. 261, 262, 69 L. Ed. 609.

These authorities establish the rule that a court which has taken property into its possession has ancillary jurisdiction, irrespective of citizenship, to determine all questions affecting the title to the impounded property. Such conclusion is a necessary corollary of the rule that the court first acquiring jurisdiction of the res has exclusive jurisdiction; for otherwise a citizen would have no court to which he could present his claim.

There is still another reason. Barnett came to the Federal Court and asked to have his claim to the 40 acre leasehold adjudicated. The Equity Rules give him that right. Equity Rule 37 (28 USCA § 723) provides:

"Anyone claiming an interest in the litigation may at any time be permitted to assert his right by intervention, but the intervention shall be in subordination to, and in recognition of, the propriety of the main proceeding."

The rule was stated by Mr. Justice Van Devanter, in Hoffman v. McClelland, 264 U. S. 552, 558, 44 S. Ct. 407, 409, 68 L. Ed. 845, as follows:

"It is settled that where, in the progress of a suit in a federal court, property has been drawn into the court's custody and control, third persons claiming interests in or liens upon the property may be permitted to come into that court for the purpose of setting up, protecting and enforcing their claims, although the court could not consider or adjudicate their claims if it had not impounded the property. Power to deal with such claims is incident to the jurisdiction acquired in the suit wherein the impounding occurs, and may be invoked by a petition to intervene pro interesse suo or by a dependent bill. But in either case the proceeding is purely ancillary. Oklahoma v. Texas, 258 U. S. 574, 581, 42 S. Ct. 406, 66 L. Ed. 771; Minnesota Co. v. St. Paul Co., 2 Wall. 609, 632, 17 L. Ed. 886; Krippendorf v. Hyde, 110 U. S. 276, 281, 4 S. Ct. 27, 28 L. Ed. 145; Compton v. Jesup, 68 F. 263, 279, 15 C. C. A. 397; Sioux City Co. v. Trust Co., 82 F. 124, 128, 27 C. C. A. 73; Minot v. Mastin, 95 F. 734, 739, 37 C. C. A. 234; Street, Fed. Eq. Pr. §§ 1229, 1245–1247, 1364."

But irrespective of Barnett's intervention, the power exists in a Court of Equity to determine controversies relating to property in its control. In Central Trust Co. v. Anderson County, 268 U. S. 93, 45 S. Ct. 427, 429, 69 L. Ed. 862, it appeared that a receiver had been appointed under a bill to foreclose a railroad mortgage. Anderson County threatened to enforce a state court decree requiring the railroad to maintain offices and shops at Palestine. An ancillary bill was brought to remove the cloud on the title to the receiver's properties growing out of such state court decree. The Supreme Court held that the court of the appointment of the receiver had power to remove the cloud, and said:

"Ancillary suits are not limited to those initiated by persons who desire to come in

and have their rights determined. Such a suit may be maintained by the plaintiff in the principal suit against strangers to the record to determine a controversy having relation to the property in the custody of the court and which, in justice to the parties before the court, ought to be determined in the principal suit. See Compton v. Jesup, 68 F. 263, 284, 15 C. C. A. 397; Street, Fed. Eq. Pr. § 1248."

And in Morgan's Co. v. Texas Central Railway, 137 U. S. 171, 201, 11 S. Ct. 61, 170, 34 L. Ed. 625, the court said:

"The jurisdiction of the circuit court did not depend upon the citizenship of the parties, but on the subject-matter of the litigation. The property was in the actual possession of that court, and this drew to it the right to decide upon the conflicting claims to its ultimate possession and control. Minnesota Co. v. St. Paul Co., 2 Wall. 609, 17 L. Ed. 886; People's Bank v. Calhoun, 102 U. S. 256, 26 L. Ed. 101; Krippendorf v. Hyde, 110 U. S. 276, 4 S. Ct. 27, 28 L. Ed. 145."

To the same effect, see opinion of Judge Walter H. Sanborn, in Landon v. Public Utilities Commission (D. C.) 234 F. 152, where the court held that an ancillary bill would lie to enjoin the enforcement of confiscatory rates established by the state of Kansas, where the utility was in the hands of a receiver. His opinion as to jurisdiction was affirmed and adopted as the opinion of the court in Public Utilities Commission v. Landon, 249 U. S. 236, 244, 39 S. Ct. 268, 63 L. Ed. 577. See, also, Landon v. Court of Industrial Relations (D. C. Kan.) 269 F. 423, where without discussion, Judge Booth granted relief under an ancillary bill to remove clouds upon the title to property in the possession of his receiver.

In answer, appellant contends "It is almost the universal rule that questions of title cannot be litigated in the ordinary foreclosure suit, and hence that those claiming title adverse or paramount to the mortgagor should not be made parties." 9 Enc. Pl. & Pr. 353. The weight of authority supports this contention. 42 C. J. 55. The reason for this rule is that it introduces a new cause of action into the litigation, contrary to the rules of good pleading. The objection, if sound, is not one which goes to jurisdiction. But this is not an "ordinary foreclosure suit"; it is an action in the nature of a creditor's bill, where the court has impounded and is administering property, and the rule contended for has no application

where the court has possession of the property. Receivership actions are governed by the authorities cited.

We conclude that the trial court did have jurisdiction to determine the title to the 40 acre leasehold.

IV. The situation as to the 80 acres and the fee title to the 40 acres, stands in different stead. The trial court had not impounded the 80 acres or the fee title to the 40, and no action was then pending involving such additional land. It was in the territorial jurisdiction of the court, but there was no diversity of citizenship between Barnett and Mayes. Concededly that court would have no jurisdiction over an independent controversy between Barnett and Mayes over such additional property, and such jurisdiction could not be conferred by consent, nor its absence cured by waiver. The appellant therefore contends that, because of the lack of the requisite diversity of citizenship, the court had no jurisdiction to adjudicate the controversy between him and Mayes as to the 80 acres.

The flaw in this contention is that the controversy over the 80 acres is not independent of the controversy over the 40 acre leasehold. Barnett's claim, in truth, was an indivisible claim to 120 acres, resting upon two questions of fact, to wit, Was the Mayes deed a forgery? and, if so, Was Barnett an heir of Leathy Sango? A wholesome rule of law prevents Barnett from suing Mayes piecemeal, first for 40 acres and then for 80. He has a single cause of action against Mayes, and cannot split it. "The rule against splitting a cause of action applies to actions for the recovery of land." 1 C. J. 1120. Appellant, in his brief in this court, cites several cases, including one from Oklahoma, holding directly that he cannot split his cause as to the 120 acres, and if he does, the decree as to part binds him as to all. This is the law. Akin v. Bonfils et al., 67 Okl. 123, 169 P. 899; Craig et al. v. Broocks, 60 Tex. Civ. App. 83, 127 S. W. 572; Dils v. Justice, 137 Ky. 822, 127 S. W. 472. Moreover, the facts are Barnett, at the outset, insisted he was entitled to a "complete determination" of his rights under his single cause of action in one court, and that the United States court. In a petition for rehearing, filed after final decree, Barnett again insisted that his claim constituted "an entire and indivisible cause of action." He repeats the contention in his assignments of error, and in his brief and argument to this court. So the precise situation confronting the trial

court and this court is, Could Barnett rightfully be denied the right to litigate his entire cause of action? Under the authorities cited by him, and under the law, Barnett could not have two trials as to his claim against Mayes of forgery and heirship. No order compelled him to submit his claim to the United States court as to the 40 acre leasehold. He could submit it to no other court, as has been seen. As has also been seen, he had a right to set up his claim to the 40 acre leasehold in the receivership action. If he exercises that right as to the 40 acre leasehold, the authorities cited by appellant show that he is bound as to the 80 acres covered by the same cause of action. To bar him from the 80 if he loses, but not decree it to him if he wins, seems unfair on the face of it. The trial court, being required by law to adjudicate his claim to the 40 acre leasehold, granted his prayer, and adjudicated his entire cause of action. Barnett now appeals.

It must be apparent that there is no substance to the controversy over jurisdiction as to the 80 acres, for two reasons. First, the trial court unquestionably had jurisdiction over the 40 acre leasehold, and its decree as to that binds Barnett as to the 80 acres, if the 80 acres had never been mentioned in the case, under the authorities cited by Barnett and above set out. Second, under well settled rules of law, when Barnett tendered the issues of heirship and forgery in his claim to the 40 acres; when Mayes accepted the issues; and when they were actually litigated and determined, those issues are forever settled as between Barnett and Mayes, and their privies in title, even in subsequent actions, involving different issues. This rule is universal, and is well stated in Baltimore Steamship Co. v. Phillips, 274 U. S. 316, 319, 47 S. Ct. 600, 602, 71 L. Ed. 1069:

"But if the second case be upon a different cause of action, the prior judgment or decree operates as an estoppel only as to matters actually in issue or points controverted, upon the determination of which the judgment or decree was rendered."

Our own court has followed this rule, in Rishel v. McPherson County, 34 F.(2d) 250. See, also, Cromwell v. County of Sac, 94 U. S. 351, 24 L. Ed. 195; Radford v. Myers, 231 U. S. 725, 34 S. Ct. 249, 58 L. Ed. 454; Bates v. Bodie, 245 U. S. 520, 38 S. Ct. 182, 62 L. Ed. 444, L. R. A. 1918C, 355; United Shoe Machinery Corp. v. United States, 258 U. S. 451, 42 S. Ct. 363, 66 L. Ed. 708; Calaf v. Calaf, 232 U. S. 371, 34 S. Ct. 411, 58 L. Ed. 642, and a great number of cases gathered in United States Fidelity & Guaranty Co. v. McCarthy (8 C. C. A.) 33 F.(2d) 7.

So, if the 80 acres had never been brought into the case, and Barnett later sued therefor in another court as he now wants to do, he would be concluded by the determination of this court that he is not an heir and that the Mayes deed is genuine. If it were not for the fact that this court must always inquire as to jurisdiction (Chicago, B. & Q. Ry. Co. v. Willard, 220 U. S. 413, 31 S. Ct. 460, 55 L. Ed. 521) we would decline to pass upon the question as moot. South Spring Gold Co. v. Amador Gold Co., 145 U. S. 300, 12 S. Ct. 921, 36 L. Ed. 712; Heitmuller v. Stokes, 256 U. S. 359, 41 S. Ct. 522, 65 L. Ed. 990; Brownlow v. Schwartz, 261 U. S. 216, 43 S. Ct. 263, 67 L. Ed. 620.

But, in our opinion, the court had power to settle the controversy as to the entire 120 acres, since it was required to determine part of it. While no case precisely in point has been found, the United States courts have never declined to settle a single controversy where it was required to determine part of it. In Mathis v. Ligon (10 C. C. A.) 37 F.(2d) 635, it appeared that one Raines, a non-resident, brought a suit to set aside her deed to Ligon, and a tax deed to Mathis. She was denied relief. Mathis, by a cross-bill directed at Ligon, undertook to establish his tax title as against Ligon, his co-defendant. Mathis and Ligon were both residents of Oklahoma. The trial court, having acquired jurisdiction by the non-residence of Raines, completed the task and entered a decree between the two residents. This court sustained the decree, and denied a petition for rehearing leveled directly at the lack of jurisdiction between the two residents of Oklahoma, which is the precise attack here. Mathis v. Ligon (10 C. C. A.) 39 F.(2d) 455, certiorari denied 51 S. Ct. 26, 75 L. Ed. ——. It is an accepted practice, in foreclosure suits, to settle controversies between co-defendants as to the property in foreclosure where there is no diverse citizenship between them. Morgan's Co. v. Texas Central Railway, 137 U. S. 171, 11 S. Ct. 61, 34 L. Ed. 625. In Craig v. Dorr (4 C. C. A.) 145 F. 307, 311, a consent decree disposed of the issues between the plaintiff, a non-resident, and one of the defendants, a resident. The cause proceeded as to a controversy between two defendants, both residents of West Virginia. The court held this was proper, and said that, "having once acquired juris-

diction, a court of equity will administer the estate, do complete equity between the parties. A cross-bill is ancillary to the original bill. Morgan v. R. R., ut supra; In re Tyler, 149 U. S. 181, 13 S. Ct. 785, 37 L. Ed. 689; Rouse v. Letcher, 156 U. S. 49, 15 S. Ct. 266, 39 L. Ed. 341; Carey v. Houston & Texas Ry., 161 U. S. 133, 16 S. Ct. 537, 40 L. Ed. 638." To the same effect is the Ninth Circuit. Lilienthal v. McCormick (C. C. A.) 117 F. 89. In that case, the court determined a controversy between co-defendants, residents of the same state.

A case, closer on the facts, is Rickey Land & Cattle Co. v. Wood (9 C. C. A.) 152 F. 22. In that case a non-resident brought a suit to quiet title to water rights, as against several defendants. One defendant, conceding plaintiff's right, challenged the right of a co-defendant as to water from the same stream. The co-defendants were both residents of Nevada. The court held that, having started to settle the controversy, it would wind it up. Jurisdiction being properly acquired, the court said, it would "proceed to do justice between all the parties * * * to the end that a multiplicity of suits may be avoided, so that tedious, expensive and unnecessary litigation may be saved."

The District Court of Idaho was confronted with a case closely analogous. There the court, in an action to foreclose à mechanic's lien, had jurisdiction between co-defendants of a counterclaim up to the extent of a lien claimed on specific property. But the counterclaim was in excess of the lien, and as to such excess it was a straight suit between residents. The query was, Could the court determine the whole controversy as to the counterclaim, or only up to the extent of the lien claimed? After setting out that this would require two courts to try the same case, the court said:

"Surely a principle the practical application of which is attended with such onerous results cannot have judicial sanction. It becomes manifest that the reason which underlies the rule above referred to, by which auxiliary proceedings fall within the jurisdiction of the court regardless of the citizenship of the parties thereto, operates in like manner to extend our jurisdiction to this counterclaim. This rule was established to avoid the necessity of attempting to administer justice by litigating controversies piecemeal, and the reasons for here taking cognizance * * * between the parties are not greater than or different from the reasons for taking cognizance of Slick Bros.' counterclaim interposed

in the answer thereto. It is essential to the complete settlement of the controversy initiated by the commencement of the principal suit that we adjudicate both." Portland Wood Pipe Co. v. Slick Bros. Const. Co. (D. C.) 222 F. 528, 530.

There is also a close analogy between the case at bar, and the question of removal of separable controversies. It is now the law that where a non-resident removes a separable controversy to the Federal Court, that court acquires jurisdiction of the controversy between the residents; it takes the whole case, in order to avoid two trials, although a separable part of the case is between residents of the same state. Foster's Fed. Practice (6th Ed.) vol. 3, pp. 29-31, and cases there cited. The Judiciary Act of 1866 (14 Stat. 306, c. 288 [28 USCA § 71 note]) expressly required that the separable controversy between residents remain in the state court. The Judiciary Act of 1875 (18 Stat. 470, c. 137, § 2 [28 USCA § 71 note]) did not so require. The Supreme Court held, in Barney v. Latham, 103 U. S. 205, 26 L. Ed. 514, that there was no constitutional objection to the entire controversy being removed, and held that to be the intent of Congress. The court, at page 213 of 103 U. S., 26 L. Ed. 514, said:

"Much confusion and embarrassment, as well as increase in the cost of litigation, had been found to result from the provision in the former act permitting the separation of controversies arising in a suit, removing some to the Federal court, and leaving others in the State court for determination. It was often convenient to embrace in one suit all the controversies which were so far connected by their circumstances as to make all who sue, or are sued, proper, though not indispensable parties. Rather than split up such a suit between courts of different jurisdictions, Congress determined that the removal of the separable controversy to which the judicial power of the United States was, by the Constitution, expressly extended, should operate to transfer the whole suit to the Federal court."

The whole policy of our law is directed against repeated trials of the same issue. One day in court is enough. The Supreme Court said, in United States v. California & Ore. Land Co., 192 U. S. 355, 358, 24 S. Ct. 266, 267, 48 L. Ed. 476:

"But the whole tendency of our decisions is to require a plaintiff to try his whole cause of action and his whole case at one time. He cannot even split up his claim (Fetter v.

Beale, 1 Salk. 11 [91 Eng. Reprint 11]; Trask v. Hartford & N. H. R. Co., 2 Allen [Mass.] 331; Freeman, Judgm. 4th Ed. §§ 238, 241); and, a fortiori, he cannot divide the grounds of recovery."

This statement has been repeatedly quoted and followed. Baltimore Steamship Co. v. Phillips, 274 U. S. 316, 47 S. Ct. 600, 71 L. Ed. 1069. The same underlying desire to avoid two trials of one case is the rationale of the established rule recently expressed by the Supreme Court in Hartford Accident Co. v. Sou. Pacific, 273 U. S. 207, 47 S. Ct. 357, 360, 71 L. Ed. 612, where the court said:

"Where a court of equity has obtained jurisdiction over some portion of a controversy, it may, and will in general, proceed to decide all the issues and award complete relief, even where the rights of parties are strictly legal, and the final remedy granted is of the kind which might be conferred by a court of law. Pomeroy's Equity Jurisdiction (4th Ed.) §§ 181 and 231; United States v. Union Pacific Railway, 160 U. S. 1, 52, 16 S. Ct. 190, 40 L. Ed. 319."

The trend of the decisions, and the reason underlying them, support the ruling of the trial court that where an indivisible cause of action involves property in the custody of the court, that court has jurisdiction, upon application of the claimant, to determine the entire cause of action presented.

Appellant not only concedes, but contends, that he cannot split his cause of action, and that he is not entitled to a trial in one court as to the 40 acre leasehold, and in another court as to the 80 acres. His contention is that the state court has jurisdiction of all of it. In this, he is clearly wrong, as the authorities set out at length earlier in this opinion demonstrate beyond question that the United States court has exclusive jurisdiction over claims asserted against the leasehold in its possession. But we agree with appellant that it must be one court or the other; that two courts cannot render decrees, mayhap conflicting, on an indivisible cause of action. Even in actions in personam, where two actions may pend simultaneously the first decree concludes the cause. And Barney v. Latham, supra, settles the question that where a Federal Court has jurisdiction of part, it has jurisdiction of all.

For these reasons, we conclude that the decree should be affirmed.

LEWIS, Circuit Judge (dissenting in part).

On May 23, 1927, the Continental Supply Company, an Ohio corporation, brought its suit to foreclose its mechanic's and materialman's lien, which it claimed to have on two oil leases in Seminole County, Oklahoma, for materials furnished the lessees, Searight, Dana and Lebow, for development of the two leasehold estates. One of the leases, known as the Youngblood lease, covered 40 acres, and the other, known as the Epperson lease, covered 80 acres. In addition to the lessees, a number of other parties who had filed similar lien claims were made defendants. The court appointed a receiver, who took charge of the property covered by the claimed liens. The plaintiff, by supplemental bill, brought in a third lease on another 40-acre tract, known as the Mayes lease, alleging that it had furnished material to Searight and Dana, used in the development of that lease, for which it claimed a lien. The receivership was extended to that lease and possession taken of the leasehold property. By fifth supplemental bill the plaintiff alleged that Cud Barnett, appellant here, was claiming a prior and superior right and title to the land covered by the Mayes lease, adverse to the rights of Searight and Dana, lessees; and in that connection alleged that on or about November 5, 1927, Barnett instituted a suit in the district court of Seminole County, in which he claimed title and right to immediate possession of the 40 acres covered by the Mayes lease, and prayed that he be required to set up any claim he had to the premises in said lien suit, that he be enjoined from interfering with the receiver's possession and control of the Mayes lease and from prosecuting his claim thereto in the State court. A copy of Barnett's petition in the State court was attached, in which it appeared that he claimed title to that 40 acres and 80 acres lying immediately north of it, that he sought an adjudication of his right to immediate possession of both tracts, and an accounting for the oil produced under leases on each tract. Barnett then came into the court below and filed answer to the fifth supplemental bill. He claimed to be the owner of the 40 acres covered by the Mayes lease adverse to the rights of Searight and Dana as lessees, and that their lessor had no title or interest in the land. He also alleged that he was the owner of the 80 acres immediately north of the 40 covered by the Searight and Dana lease, that Red Bank Oil Company and Henry T. Lamb were in possession of the 80 acres, extracting oil therefrom under a lease given by one who had no

title to that 80. He asked that Red Bank Oil Company and Lamb be made parties in the lien suit, that the lease on the 80-acre tract, as well as that on the 40-acre tract, known as the Mayes lease, be cancelled, that he be adjudged the owner of both tracts, that the Red Bank Oil Company and Lamb be held to account to him for oil produced from the 80 acres, and the lessees of the 40 acres be also held to account, and for possession of both tracts. He further alleged that at the time he instituted his suit in the State court he did not know that the lien suit was pending in the court below, that the basis of his claim to title to the 80 acres was the same as to the 40 acres, and that he desired a complete determination of all his rights in both tracts by the court below. E. L. Mayes filed a response to Barnett's answer. He claimed to be the owner of the fee title to both tracts and had given leases to the respective parties who were developing them for oil and against whom Barnett sought an accounting. The parties to the controversy between Barnett and those who claimed title to the two tracts and oil leases thereon were all citizens and residents of Oklahoma. No objection to the jurisdiction of the court over that controversy was made until after the district judge had expressed his opinion that the findings on that issue would be against Barnett. He thereupon, and before decree was entered, moved to dismiss as to that controversy, on the ground that there was no jurisdiction. That question is presented here on Barnett's appeal, the court having adjudged him without interest in or title to either tract.

It is to be noted that the plaintiff in the original suit claimed no interest in or lien upon the 80-acre tract or the lease on that tract. I am therefore unable to see how the issue between Barnett and Mayes and his lessees over title to the 80 acres can be said to be auxiliary or supplementary to the main suit in any respect, and thus dependent on it for jurisdiction. That issue seems to me to be wholly independent of and foreign to any issue in the main case. It matters not that Barnett at first thought he wanted the Federal court to adjudge his interest in both tracts. He could not confer jurisdiction. It is said that his cause of action to the whole 120 acres was indivisible, that he could not litigate with Mayes in the Federal court as to who had title to the 40-acre tract and then litigate with Mayes in the State court as to which had title to the 80 acre tract, that inasmuch as his claimed chain of title was the same to each tract a decree against him in the

Federal court would bar him from maintaining a suit in the State court. Even so, that could not confer jurisdiction if there was no controversy or claim in reference to the 80-acre tract or lease thereon in the main suit. It was entirely immaterial to all of the parties to the main suit and the issues between them whether fee title to the 80 acres was in Barnett or in Mayes, and whether the lessees of that tract held under Mayes or Barnett. There was no reference to the 80 acres in the fifth supplemental bill, which only called the court's attention to the fact, and that for the first time, that Barnett claimed title to the 40 acres covered by the Mayes lease, on which liens were claimed, and that he had brought a suit in the State court to obtain possession of that 40; and that, it was said, would interfere with the jurisdiction of the court and the possession of its receiver. The restraining order issued against Barnett from further prosecuting his suit in the State court referred only to that 40 acres. The 80-acre tract was not brought into the pleadings until Barnett filed his answer to the fifth supplemental bill, and when Mayes and his lessees of the 80 acres joined issues with Barnett it constituted, in effect, a new and independent suit between them in which Barnett was plaintiff and Mayes and his lessees of the 80 acres were defendants. I therefore conclude that the decree should be reversed in so far as it affects the 80-acre tract. In other respects I concur.